THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

CAROLINE MAY, Admx.

*Filed at Springfield June 14, 1883—Rehearing denied January Term, 1884.*

1. NEGLIGENCE — *causing death — evidence as to support of family, proper.* In an action by an administrator against a railway corporation, to recover damages for negligently and wrongfully causing the death of the intestate, evidence that the deceased in his lifetime supported the plaintiff (his widow) and her children, is not only admissible, but highly proper, if not indispensably necessary.

2. ERROR—*in some instructions, when, as a whole, are most favorable to the objector.* Where the instructions, taken as a series, taking those on both sides, state the law of the case more favorably to the defendant than the plaintiff, and more favorably to the defendant than the law warrants, a reversal will not be had on the appeal of the defendant, even if one or more of the plaintiff's instructions, considered alone, are probably subject to criticism.

3. MASTER AND SERVANT—*who is a fellow-servant of a common master.* One servant of a corporation, to whom is delegated the power of hiring and discharging other servants, and in whom the corporation vests the sole control and direction of such other servants in and about the work which they may be ordinarily required to do, is, as to such servants whom he so hires, discharges and controls, the representative of the master when exercising such power or control, and is not a fellow-servant, nor is he in the same line of employment as the servants he so controls.

4. SAME—*liability for negligence of one servant injuring another.* The mere fact that one of a number of servants who are in the habit of working together in the same line of employment for a common master, has power to control and direct the actions of the others with respect to such employment, will not of itself render the master liable for the negligence of the governing servant, resulting in an injury to one of the others, without regard to other circumstances. Each case must depend upon its own circumstances.

5. If the negligence complained of consists of some act done or omitted by the servant having such authority, which relates to his duty as a co-laborer with those under his control, and which might as readily happen with one of them having no such authority, the common master will not be liable.

6. But where the negligent act arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable. In such case the governing servant is not the fellow-servant of those under his charge with respect to the exercise of such powers.

7. SAME—*when command of servant is that of his master.* Where a corporation confers authority upon one of its employees to take charge and control of a gang of men in carrying on some particular branch of its business, such employee, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the corporation itself, and all commands given by him within the scope of his authority are in law the commands of the corporation; and the fact that he may have an immediate superior between him and the company makes no difference in this respect.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. WILLIAMS, BURR & CAPEN, for the appellant:

The admission of evidence tending to show the poverty of the deceased was error, the only question in this regard being what is the actual pecuniary damage resulting to the widow and next of kin. *Chicago and Northwestern R. R. Co.* v. *Moranda,* 93 Ill. 302; *Chicago* v. *O'Brennan,* 65 id. 160; *Pittsburg, Ft. Wayne and Chicago Ry. Co.* v. *Powers,* 74 id. 341.

The common master is not responsible for an injury to one employee caused by the negligence of a fellow-employee in the same line of employment. *Chicago and Alton R. R. Co.* v. *Murphy,* 53 Ill. 336; *Valtez* v. *Ohio and Mississippi R. R. Co.* 85 id. 500; *Illinois Central R. R. Co.* v. *Keen,* 72 id. 512; *Honner* v. *Illinois Central R. R. Co.* 15 id. 550; *Illinois Central R. R. Co.* v. *Cox,* 21 id. 20; *Lalor* v. *Chicago, Burlington and Quincy R. R. Co.* 52 id. 401; *Chicago and Alton R. R. Co.* v. *Keefe,* 47 id. 108.

Under the undisputed facts of this case, Fricke and the deceased were fellow-servants; the former was, in no sense, the *alter ego* of the master, so as to render it liable for his mere personal negligence. *Hart* v. *Peters,* 14 Wis. 542; *State* v. *Malster,* 26 Md. 176; *Crispin* v. *Babbitt,* 81 N. Y. 516; *Howells* v. *Landore Steel Co.* 11 Moak, 153; *Peterson* v. *W. C. and M. Co.* 50 Iowa, 673; *Corcoran* v. *Holbrook,* 59 N. Y. 517; *Lehigh Valley Coal Co.* v. *Jones,* 86 Pa. St. 432; *Delaware and Hudson Canal Co.* v. *Carroll,* 89 id. 374; *McAndrews* v. *Burns,* 39 N. J. 117; *Beanlieu* v. *Portland Co.* 48 Maine, 291; *Feltham* v. *England,* L. R. 2 Q. B. 33; *Blake* v. *M. C. R. R. Co.* 70 Maine, 60; *K. P. Ry. Co.* v. *Salmon,* 11 Kan. 83; *Murphy* v. *Smith,* 115 E. C. L. 361; *Hard, Admr.* v. *V. and C. R. R. Co.* 32 Vt. 472; *Wigmore* v. *Jay,* 5 Exch. 354; *Gallagher* v. *Piper,* 111 E. C. L. 668; *William* v. *Carlter,* 52 Mo. 372; *Albro* v. *Agawam Canal Co.* 6 Cush. 75; *Lawler* v. *A. R. R. Co.* 62 Maine, 463; *Marshall* v. *Schrieker,* 63 Mo. 308; *O'Connell* v. *Baltimore and Ohio R. R. Co.* 20 Md. 21; *Schauch* v. *N. R. R. Co.* 25 id. 462; *O'Connor*

v. *Roberts*, 120 Mass. 227; *Zeigler* v. *Day*, 123 id. 152; *Wilson* v. *Merry*, L. R. 1 H. L. 321.

No distinction as to the liability of the common master arises from the different grades or ranks of the servants employed. See all the above cases, and, also, *Faulkner* v. *E. R. R. Co.* 49 Barb. 324; *Weger* v. *Pennsylvania R. R. Co.* 55 Pa. 460; *Sherman* v. *R. and S. R. R. Co.* 17 N. Y. 153; *Wright* v. *New York Central R. R. Co.* 25 id. 562; *Searle* v. *Lindsay*, 103 E. C. L. 429; *Collier* v. *Steinhart*, 51 Cal. 116; *Summersell* v. *Fish*, 117 Mass. 312; *Holden* v. *Fitchburg R. R. Co.* 129 id. 268; Cooley on Torts, 544, 561–563.

It would seem that the law could go no further than to hold the corporation liable for the acts and negligence of the officer exercising the powers and authority of general superintendent. Cooley on Torts, 562; Wharton on Negligence, secs. 229, 240, 241; Moak's Underhill on Torts, 50.

When the facts are not controverted, the question as to what is a fellow-servant is a pure question of law. This is elementary. *Crispin* v. *Babbitt*, 81 N. Y. 516; *Marshall* v. *Schricker*, 63 Mo. 308; *Albro* v. *Agawam Canal Co.* 6 Cush. 75; *Farwell* v. *B. and W. R. R. Co.* 4 Metc. 49.

Messrs. FIFER & PHILLIPS, and Mr. WM. E. HUGHES, for the appellee:

The question what were Fricke's powers, and how far he stood in the company's place and represented it to the men, is one of fact only, that is conclusively settled by the verdict. *Mullen* v. *Steamship Co.* 78 Pa. St. 25; *Lehigh Valley Coal Co.* v. *Jones*, 86 id. 432; *Delaware and Hudson Canal Co.* v. *Carroll*, 89 id. 374; *Toledo, Wabash and Western Ry. Co.* v. *Moore*, 77 Ill. 217; *Chicago, Burlington and Quincy R. R. Co.* v. *Gregory*, 58 id. 284.

There was no error in proving who May's family were, and that in his lifetime he supported them. *Chicago and Northwestern R. R. Co.* v. *Moranda*, 93 Ill. 302.

When the master gives over the whole charge of his business to another, the person to whom such power is delegated stands in the master's place to all subordinates, and his negligence is chargeable to the master. Wood's Law of Master and Servant, p. 764, sec. 390.

The master is liable for an injury to a servant resulting from the orders of a superintendent or other employee or agent having the supervision of the work, and power to employ, direct and discharge the laborers. *Lalor* v. *Chicago, Burlington and Quincy R. R. Co.* 52 Ill. 401; *Gormly* v. *Vulcan Iron Works*, 61 Mo. 492.

Negligence by a representative of the master, arising in the form of improper orders and directions given about the work and in the control of operatives, will render the master liable. *Lalor* v. *Chicago, Burlington and Quincy R. R. Co.* 52 Ill. 401; *Chicago, Burlington and Quincy R. R. Co.* v. *McLallen*, 84 id. 116; *Dowling* v. *Allen*, 74 Mo. 13; *Railroad Co.* v. *Fort*, 17 Wall. 553; *Chicago Ry. Co.* v. *Bayfield*, 37 Mich. 205; *Frost* v. *Union Pacific Ry. Co.* 11 Am. L. R. 101; *Mann* v. *Oriental Print Works*, 11 R. I. 153; *Keegan* v. *Cavanaugh*, 62 Mo. 230; *Borea Stone Co.* v. *Krafts*, 31 Ohio St. 287; *Murphy* v. *Smith*, 115 E. C. L. 361; *Crispin* v. *Babbitt*, 81 N. Y. 516; Thompson on Negligence, p. 975, sec. 5; *Mullen* v. *Steamship Co.* 78 Pa. St. 25; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Laning* v. *New York Central R. R. Co.* 49 id. 521; *Little Miami R. R. Co.* v. *Stevens*, 20 Ohio, 415; *L. and N. R. R. Co.* v. *Collins*, 2 Duvall, 114; *Malone* v. *Hathaway*, 64 N. Y. 5; Shearman & Redfield on Negligence, (3d ed.) secs. 102, 103; Wharton on Negligence, sec. 229; 2 Thompson on Negligence, pp. 1028, 1031, secs. 34, 35; Cooley on Torts, 562.

The question whether servants are in the same line of employment is properly left to the jury. *Toledo, Wabash and Western Ry. Co.* v. *Moore*, 77 Ill. 217; *Chicago, Burlington and Quincy R. R. Co.* v. *Gregory*, 58 id. 284.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This action was brought in the McLean circuit court, by Caroline May, the appellee, as administratrix of her late husband, Christian May, against the Chicago and Alton Railroad Company, for negligently and wrongfully causing his death. There was a trial upon the merits in the circuit court, resulting in a judgment for the plaintiff for $3250, which, on appeal to the Appellate Court for the Third District, was affirmed, and the company brings the case here for review.

In view of the legal questions presented by the record and discussed by counsel, we deem it proper to state the circumstances immediately connected with the death of the deceased with some particularity. They are in substance as follows: The deceased, at the time of his death, was one of a number of hands in the employment of the railroad company in a lumber yard connected with its work shops, at Bloomington, under the immediate control and charge of one Frederick Fricke, who was also in the employment of the company, as foreman of the lumber yard. Immediately before the death of May, we find Fricke, together with a squad of these hands, including the deceased, engaged in removing a lot of lumber from the yard to the car shops. The lumber in question consisted of a pile of heavy oak plank, some sixteen feet long. For the purpose of removal it had already been placed upon a small, light car, some six or eight feet long, called a "rubble car," which was used in handling lumber in the yard and in removing it to the shops. The lumber, as well as the car, was at the time sheeted with ice and snow. The car thus loaded stood on the track north of the shops, and immediately south of it, on the same track, stood a large box car which had to be got out of the way before the lumber could be run down into the shops. To get this car out of the way it was necessary that both cars should be pushed some distance north, beyond a switch, so the box car could be switched

off to one side, and by that means let the rubble car, so loaded, pass back south into the shops. To accomplish this object Fricke ordered the men to push the box car against the rubble car, which shoved the lumber so far over on the north end of it that the small car, thus loaded, would have tipped up and thrown the lumber out, but for the fact the bumper of the box car held it down. The two cars were pushed in this manner till they passed the switch, when Fricke ordered the men to leave the small car where it was, and push the large one south, out of the way. Two of the men, Grenz and Schmekel, went to the north end of the planks, as they lay projected on the rubble car, and held them up, while the other hands commenced pushing the large car, as directed by Fricke, and as soon as the cars were sufficiently separated, some of the men, including May, went in between the two cars, to enable them to push with more effect. While matters were in this situation, Fricke called Grenz and Schmekel to also come and help push the large car, whereupon they told him the plank would fall and some one would get hurt. Notwithstanding this admonition and warning, Fricke repeated his order with emphasis, saying, "Let the lumber go to the devil." The order was obeyed, and instantly the north end of the lumber fell to the ground, tilting up the south end of the little car and driving it forward with great force against the end of the car being thus shoved. The action of the car was so instantaneous the parties pushing at the end of the box car had no time to escape, and the deceased was caught between the bumper of the large car and the rubble car, thereby inflicting injuries from which he subsequently died.

The material portion of the declaration, wherein the cause of action is formally set forth, charges that the deceased, "on December 24, 1880, was employed by defendant as a laborer in the lumber yard connected with its machine shops, at Bloomington, under the control and direction of one Fred-

erick Fricke, foreman of said lumber yard, who had full con-
trol and authority over said intestate and his fellow-servants
employed therein, with full power to hire and discharge them,
and that said Fricke stood to the said Christian May and his
fellow-servants in the lumber yard as the representative of
the defendant, which was their common master; and, while
so employed, said May was, by the order and direction of
Fricke, pushing a certain car of defendant upon a track in
said yard, using all due care and diligence for his own safety,
and that the said Fricke, by his gross negligence in managing
and directing the fellow-servants of said May, caused a cer-
tain other car or truck to be thrown with great violence
against him, the said May, whereby he was killed," etc.

Since no question is made as to the sufficiency of the
declaration, and all the facts therein charged are, by the
affirmance of the judgment in the Appellate Court, conclu-
sively settled adversely to the appellant, the present contro-
versy is brought within very narrow limits. The questions
of law presented for determination arise upon the instruc-
tions, and the rulings of the court upon questions of evidence.
As to the latter, they may be disposed of in a few words.

Upon the trial appellee was permitted to prove, against the
objections of appellant, that the deceased in his lifetime sup-
ported appellee and her children. In a case of this character,
where the action is founded solely upon the hypothesis that
the plaintiff, by reason of the husband's death, has been
injured in her means of support, such evidence is not only
admissible, but highly proper,—indeed, almost indispens-
able,—and there is nothing in the cases referred to sustain-
ing a contrary view. We find this objection in appellant's
brief in the Appellate Court, only. It seems to be abandoned
by counsel in their brief in this court, and therefore nothing
further need be said in reference to it.

Exceptions have been taken and objections urged to most
all of appellee's instructions, but we do not think any of them

are well founded. One or two of them, standing alone, would probably be subject to criticism, but when taken as part of a series, including those given for the defendant as well as those for the plaintiff, we are unable to discover any substantial objection to them. Indeed, when thus considered, they are much more favorable to the appellant than to the appellee, and in view of the special circumstances of the case, more so, we think, than the law warranted. The instruction claimed to be most objectionable, and the only one specially noticed in appellant's brief in this court, is as follows:

"2. That one servant of a corporation to whom the corporation delegates the power of hiring and of discharging other servants, and in whom the corporation vests the sole control and direction of such other servants in and about the work which they may be ordinarily required to do, is, as to such servants whom he so hires, discharges and controls, the representative of the master, and is not a fellow-servant, and is not, under such state of facts, if proven by the evidence, in the same line of employment as the servants whom he so controls."

The consideration of this instruction will necessarily lead us to inquire when the master will, and when he will not, be held liable for the negligence of one servant resulting in injury to another, and also to determine, as near as may be, the controlling principle governing cases of this character.

Counsel for appellant, after referring to that part of the opinion in the *Moranda case*, 93 Ill. 302, wherein is discussed the reasons which led to the adoption of the rule which exempts the common master from liability on account of an injury caused by the negligence of a fellow-servant in the same line of employment, proceed to say of this instruction: "It would hardly seem necessary to argue that this instruction places the question of who are fellow-servants on an entirely different basis,—that is, although, as in this case,

they were in the strictest sense consociates, yet if one had the right to employ and discharge the other, and direct the work, they are not fellow-servants.   This may all be true, and yet public policy requires one to watch the other, and notify the superior of incapacity or carelessness in a dangerous employment, as much as if they were all employed and directed by a common superior." It is to be remarked, in the first place, the office or object of the instruction was not to state to the jury the reasons upon which the rule in question is founded, but rather to state a hypothetical case in which the rule itself would not be applied, and if this fact is kept in view we see no ground for misapprehension, nor do we see any real, or even apparent, conflict between it and what is said in the *Moranda case.*   The instruction does not, either in terms or by implication, tell the jury that a servant who has power to hire and discharge other servants with whom he is in the habit of working or rendering service to a common master, can not, by reason thereof, be a fellow-servant within the meaning of the rule which exempts the master from liability.   But admitting the instruction, when considered alone, is ambiguous in this respect, the jury could not possibly have been misled by it, for the court distinctly laid down the very reverse of this proposition in the following instructions given for the defendant:

"3.   The court instructs the jury, for the defendant, that the common employer is not liable for any injury that may accrue to one of a set of fellow-servants of that common employer engaged in the same line of employment, by reason of the negligence of a fellow-servant in the same line of employment, and the fact that the fellow-servants are employed by different agents of the common employer, or that one has general supervision of the work of the whole, and a right to direct its execution, does not prevent them from being fellow-servants of the common employer in the same line of employment."

"7.   The court instructs the jury, for the defendant, that the mere fact that of a gang of workmen one is the foreman, does not prevent their all being servants in the same line of employment, or render the employer liable for an injury resulting from the negligence of such superintendent or superior."

The instruction complained of, when fairly construed, in effect tells the jury that a servant having the exclusive control over other servants under a common master, including the power of hiring and discharging, is, in the exercise of these powers, the representative of the master, and not a mere fellow-servant, and this, we understand, is the true rule on the subject.   It is true the instruction does not state this in so many words, but when construed in the light of the facts and the two instructions above mentioned given for the defendant, what we have stated is the fair import of it. More or less is to be inferred in all writings, and instructions are no exceptions to the rule.   Any attempt to say, in express terms, every possible conclusion or inference intended to be drawn from a writing, could not, in the nature of things, be done, for the attempted explanations would also have to be explained, and so on indefinitely.   Moreover, such a course, instead of leading to perspicuity and certainty, would most generally result in confusion and doubt.   Now, if, after the word "master," in the fourth line from the bottom of the instruction, the words, "when exercising such power or control," were inserted, it would relieve the instruction from all ambiguity whatever, and it would be entirely unobjectionable, even if standing alone.   But we think the omitted words are fairly implied, and hence there is no substantial objection to the instruction.

The true rule on the subject, as we understand it, is this: The mere fact that one of a number of servants who are in the habit of working together in the same line of employment, for a common master, has power to control and direct the actions of the others with respect to such employment,

will not of itself render the master liable for the negligence of the governing servant, resulting in an injury to one of the others, without regard to other circumstances.   On the other hand, the mere fact that the servant exercising such authority, sometimes, or generally, labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others.   Every case, in this respect, must depend upon its own circumstances.   If the negligence complained of consists of some act done or omitted by one having such authority, which relates to his duties as a co-laborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable.   For instance, if the section boss of a railway company, while working with his squad of men on the company's road, should negligently strike or otherwise injure one of them, causing his death, the company would not be liable; but when the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable.   In such case he is not the fellow-servant of those under his charge, with respect to the exercise of such power, for no one but himself, in the case supposed, *is clothed with authority to command* the others.

When a railway company confers authority upon one of its employees to take charge and control of a gang of men in carrying on some particular branch of its business, such employee, in governing and directing the movements of the men under his charge with respect to that branch of its business, is the direct representative of the company itself, and all commands given by him within the scope of his authority are, in law, the commands of the company, and the fact that he may have an immediate superior standing between him and the company makes no difference in this respect.   In

exercising this power he does not stand upon the same plane with those under his control. His position is one of superiority. When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey, at the peril of losing their situations, and such commands are, in contemplation of law, the commands of the company, and hence it is held responsible for the consequences. These views are in strict accord with all that is said in the *Moranda case,* to which such frequent references have been made. It is believed, moreover, that the test here suggested, and recognized in many of the cases, will reconcile many of the apparently conflicting decisions of the courts of this country which have declined to follow the English rule on this subject, and the principle, though not formally announced heretofore, is the logical result of our own adjudications.

Testing the present case by the rule here announced, the company is clearly liable, for it is manifest that May's death was the direct result of an improper and inconsiderate order that no one exercising ordinary skill or prudence would have given. It was not a mere careless act done by him in performing his work as a co-laborer or fellow-servant, but it was a negligent and unskillful exercise of his power and authority over the men in his charge, for which, as we have already seen, the company must be held to answer. In support of the general views here expressed we cite the following authorities: *Buckner* v. *New York Central Ry. Co.* 2 Lansing, 506, (49 N. Y. 672); *Chicago, Burlington and Quincy R. R. Co.* v. *McLallen,* 84 Ill. 116; *Lalor* v. *Chicago, Burlington and Quincy R. R. Co.* 52 id. 401; *Mullen* v. *P. and S. M. Steamship Co.* 78 Pa. St. 25; *Gormly* v. *Vulcan Iron Works,* 61 Mo. 492.

The judgment of the Appellate Court, we think, for the reasons stated, is right, and it is therefore affirmed.

*Judgment affirmed.*

Sheldon, Ch. J., and Scott and Craig, JJ., dissenting:

We are unable to concur in the opinion in this case. The circuit court, at the instance of the plaintiff, gave the following instruction to the jury:

"That one servant of a corporation, to whom the corporation delegates the power of hiring and of discharging other servants, and in whom the corporation vests the sole control and direction of such other servants in and about the work which they may be ordinarily required to do, is, as to such servants whom he so hires, discharges ahd controls, the representative of the master, and is not a fellow-servant, and is not, under such state of facts, if proven by the evidence, in the same line of employment as the servants whom he so controls."

It is the well settled general doctrine that a person entering the service of another takes upon himself, in consideration of the compensation to be paid him, the ordinary risks of the employment, including the negligence of his fellow-laborers. (*Illinois Central R. R. Co.* v. *Cox,* 21 Ill. 20.) The mere fact that there was delegated to Fricke, the foreman here, the power of hiring and discharging other servants, and that there was vested in him the sole control and direction of the other servants, did not, in the respect of his alleged act of negligence in this case, change his character from that of a co-servant to that of a representative of the company. The general rule is, that a foreman, or one who superintends or controls the operations of the servants in a particular business, is a fellow-servant as much as the other servants whose work he superintends; that if the master places a servant in a position of authority over other servants, and makes the inferior servants subject to the direction and control of the superior, he is not chargeable for the consequences of directions given by such superior servant within the scope of their employment. *Feltham* v. *England,* L. R. 2 Q. B. 32; *Wilson*

v. *Merry*, L. R. 1 H. L. 326; *Howells* v. *Landore Steel Co.* L. R. 10 Q. B. 62, (11 Moak, 153); *Lawler* v. *A. R. R. Co.* 62 Maine, 463; *Albro* v. *Agawam Canal Co.* 6 Cush. 75; *O'Conner* v. *Roberts,* 120 Mass. 227; *Weger* v. *Pennsylvania R. R. Co.* 55 Pa. 460; *Davis* v. *Detroit R. R. Co.* 20 Mich. 105.

We believe the true rule now prevailing, as established by the great weight of authority, and the only one to be sustained on principle, is, that the master can not be held chargeable for any act of negligence on the part of the superior servant, except in so far as such servant is charged with the performance of the master's duty to his servants, such as, the supplying of safe machinery, the selection of competent servants, etc.; and to the extent of the discharge of those duties which the master owes to his servants, by the superior servant, the latter stands in the place of the master, but as to all other matters he is a mere co-servant. *Crispin* v. *Babbitt,* 81 N. Y. 516; *Flike* v. *B. and A. R. R. Co.* 53 id. 549; *Wilson* v. *Merry, supra; Davis* v. *Central Vermont R. R. Co.* 55 Vt. 84; *State, use of Hamelin* v. *Malster et al.* 57 Md. 287; Wood on Master and Servant, sec. 438, *et seq.*

In the application of the rule to the case in hand, there was one of the company's duties to its servants which was devolved upon Fricke, viz., the hiring and discharging of servants. In that respect Fricke was the representative of the company, and for any negligence of his in the performance of that duty,—in not employing competent or not discharging incompetent servants,—the company would have been responsible. So if Fricke, in the exercise of his power of control and direction of servants, had directed the deceased to do an act not within the scope of his employment which exposed him to hazards and dangers that were not contemplated in the contract of service, the company might have been liable for injury to the deceased therefrom, there being a duty on the part of the master not to expose the servant to

extraordinary risks not incident to the service in which he was employed. Such was *Lalor's case,* 52 Ill. 401, cited by appellee's counsel. And the *case of McLallen,* 84 Ill. 116, cited, was one of injury to a conductor from the giving of a negligent order as to the running of the train, by the assistant superintendent, he being a general officer, "to whose orders the trains were all subject." His act was one in the general management of the business of the corporation, and in the discharge of a duty pertaining to the principal.

We see nothing in these cases to militate against the views we express. The only matters in which Fricke was charged with the performance of the company's duties to its servants, and wherein he was the representative of the company, were the two we have mentioned above. The negligence of Fricke which is here complained of, occurred in the performance of the lowest detail of common laborer's work,—pushing a car-load of lumber into the car shops. It was not a duty which the company owed to its servants to give any directions about the doing of that piece of work. In the doing of it, Fricke was working together with the others, as a hand with them, as he did in all the work of the yard. He was strictly, we think, but a fellow-laborer with them, and did not act as the representative of the corporation in the doing of that work, or giving directions in the doing of it. Suppose that instead of the other two men he had himself been holding up the lumber on the rubble car, and he had let it drop, could it be said that that was not the negligence of a fellow-servant?— that it was not one of the ordinary risks of the work which the other workmen had assumed? We think not, but that it was strictly such. We do not see that Fricke's directing the two men to let go the lumber could found any more of a liability than his doing of the act himself.

There would have been more of plausibility in this claim of liability if the deceased had been injured in the doing of an act which Fricke had ordered him to do. But not even

such was the case. May, the deceased, was not engaged at the rubble car, on which was the lumber, at all; he was at the other car—the stock car. The two men, Grenz and Schmekel, were alone holding up the lumber on the rubble car, and it was they alone whom Fricke directed to let go of the lumber, and on their doing so it fell down, and forced the rubble car forward till it struck and injured the deceased, who was standing in front of the bumper of the stock car.

We think this instruction was erroneous, and that because of it the judgment should be reversed.