THE CONSOLIDATED COAL COMPANY OF ST. LOUIS
v.
GEORGE WOMBACHER.

*Master and Servant—Personal Injury—Fellow Servant—Inexperienced
Employe—Variance—Mines.*

In an action to recover from a coal company damages for a personal
injury alleged to have arisen through its negligence in placing an inexpe-
rienced servant in a dangerous situation without cautioning him thereof,
this court holds that the night boss, under whose direction the plaintiff
undertook the work which led to the injury, was not his fellow servant, but
a vice-principal of the master, who should have warned said employe of the
danger and how to avoid it; and that there is no material variance
between the allegations of the declaration and the proof.

[Opinion filed November 1, 1889.]

APPEAL from the Circuit Court of St. Clair County; the
Hon. AMOS WATTS, Judge, presiding.

Mr. CHARLES W. THOMAS, for appellant.

Messrs. TURNER & HOLDER, for appellee.

REEVES, P. J. This suit was brought by appellee to recover
for a personal injury sustained by him while working in one
of the mines operated by appellant. This mine was what is
known among coal operators as a machine mine. In such
mines there is a division of labor; certain employes mine or
cut the coal with a machine used for that purpose, others
blast the coal or shoot it down, others load the coal into
boxes, and still others haul the loaded boxes to the pit bot-
tom to be hoisted, while yet others lay track and set props
when required. The coal loaders were divided into two
classes; one loaded only in the entries, where, it would seem
from the evidence, the roof was made secure, and the other
class of loaders worked in the rooms. The entry loaders

were required to clean up all the refuse as well as load the coal. The room loaders only loaded the mined coal. The entry loaders received 23½ cents per box for the coal loaded, and nothing for removing the refuse. The room loaders received thirteen cents per box. Over all these several classes of employes there was a foreman, called the " pit boss." The mine was worked day and night. During the day the pit boss was personally in charge, and at night there was a night foreman who acted under the pit boss, and stood in his absence as his representative, so far as the men engaged in mining and loading the coal were concerned.

Appellee was not a coal miner, and, so far as the evidence disclosed, had no experience as a coal miner. He came from a farm, and had been at work for appellant only for a few mon'hs—all the time, up to the night of his injury, loading the m ned coal in the entries. On the night appellee was injured he was without work in the entry where he had been employed. The mining machine had not on that night got around to the entry where appellee had been at work, and appellee was waiting for the machine and other men to make the coal in his entry ready for loading. The night foreman came to him, and, finding that he had nothing to do, told him to come with him to a certain room where there was some coal to be loaded. Appellee went with him to the room and began loading. He worked three hours, when, as he expresses it, the top fell down on him, and he laid there covered with rock and slate until he was taken out. His injuries were very severe, resulting in the paralyzation of his lower extremities. In the court below appellee recovered a judgment for $2,500, from which the appeal is taken.

Under the evidence, several points are made by appellant against appellee's right of recovery. It is insisted there was no such direction by the night foreman, conceding that appellant would be bound by the direction of the night foreman, as would make appellant responsible for the injury; that at most, appellee received only a permission from the night foreman to go into the room and work. The foreman says, when appellee claimed that he had nothing to do, " I said to him,

'There is a room in here I will let you go in; there may be a couple of boxes of coal in there. I have got a man in there c'eaning up the dirt. You can go in and help load the coal.'" Appellee says: "The night boss came along (where he was sitting waiting for the machine to mine the coal in the entry), and said to me, 'You have nothing to do?' I said 'No,' and he then said, 'Come along with me into this room, there is a load of coal here.'" So far as the legal responsibility of appellant is involved, it is not apparent that it would make any difference which account of the matter is accepted. The jury may have accepted the version given by appellee, and if so, there was a direction by the night foreman to appellee to go into the room and load the coal.

It is further insisted that the night foreman was not the representative of appellant, and did not stand toward appellee in the place of the master, clothed with such authority as made him the superior of appellee, but their relationship was that of fellow servants; so if, by the careless act of the night foreman, appellee was injured, he can not recover against the common master.

Ritzheimer, the night foreman, testified : "I had charge of the mine at night and got my orders from the pit boss. I could stop a man or put him to work. I could tell a man to do this or quit. I had authority when I was in charge at night. I had no authority to hire men. I had entire charge and control of the mine at night."

Mr. Harding, the mine superintendent, states that "Ritchey was the pit boss on duty in the day time, and at night a man was left in charge to carry out Mr. Ritchey's directions, and that of necessity this man had authority to direct the men in the mine, under the general directions of Ritchey." Mr. Ritchey says: "Ritzheimer worked under directions as night boss, and his duty was to see that the men done the work I gave them."

It appears from this evidence that the men working in the mine at night were under the direction and subject to the orders of Ritzheimer. When such an authority is given to one of several servants of a common master, the servant having such

authority stands as to the others in the place of the master.   In Thompson, Adm'r, v. C., M. & St. P. R. R. Co., 14 Fed. Rep. 564, this language is used:

" In the absence of statute, the general rule is that the negligence of a fellow servant is one of the risks assumed by the employe and for which the employer is not liable.   But this general rule has its exceptions, one of which is that where the employer places one employe under the control and direction of another, and the latter, in the exercise of this authority so conferred, orders the former into a place of unusual danger and thus exposes him to extraordinary perils, of the existence and extent of which he is not advised, the master is liable. This for the reason that in giving such an order the superior servant stands in the place of the employer.   If the employer or his authorized agent leads the employe to expose himself to a danger not ordinarily incident to his employment, which is known to the former and unknown to the latter, whereby the latter is injured, an action may be maintained to recover damages for such injury.   If the danger is apparent and is as well known to the employe as to the employer, the former takes the risk of it; but if the employer knew, or by the exercise of ordinary care might have known, that the employment was hazardous to a degree beyond that which it fairly imports, he is bound to inform the latter of that fact or put him in possession of such information."   See also C. & A. R. R. Co. v. May, Adm'x, 108 Ill. 288, and cases cited.

It must be remembered that appellee was not a practical miner.   So far as shown, he had never done any work in a mine except that of loading coal in the entries.   Had he been a practical miner, it would have been his duty, when he went into the room to work, to have examined the condition of the roof, and having found it as it is shown by the evidence, to have removed that which was loose and liable to fall.   But it does not appear that appellee knew what was necessary, or had any information as to his duty in this particular.   He was taken into a place of unusual danger, compared with the place where he had been at work, and the representative of the employer should have known, if he did not know, of that

danger, and should have informed appellee of the danger and how to avoid it.   He wholly failed in his duty in this particular, and the employer should be held responsible for the consequences of such failure.

It is also urged that there is a fatal variance between the allegations of the declaration and the proofs made.   The declaration alleges that at the place where appellee was injured there was overhanging him, while at labor, a large quantity of rock which was not propped up, and that the pit boss examined the rock, and after such examination directed appellee to continue his work thereunder, and represented to appellee that the labor so being performed by him was without danger, etc., when in fact the pit boss knew that it was dangerous to work under said rock, etc.   The proof, it is claimed, failed to show that there was any overhanging rock; failed to show an examination of the place by the night boss, and that he had actual knowledge of the condition of the room where he sent appellee to work, and that the substance that fell and injured appellee was rock.   The material averments of the declaration on this branch of the case were, that Ritzheimer was the superior of appellee, with authority to direct him in his work; that he did place him at work in a known dangerous place without giving him information of the danger, and that in consequence, and without the fault of appellee, he was injured by the falling of rock upon him. Not literally, but substantially, all these averments find support in the evidence.   True, Ritzheimer is not shown to have had actual knowledge, either from examination or otherwise, of the danger of the place where he placed appellee to work, but enough is shown to say that he ought to have known of such danger, and that before placing a common laborer in such a place it was his duty to know whether it was dangerous or not; to have made the examination that would have disclosed to him the danger.   An allegation of knowledge of danger in such a connection would be met by proving that had the representative of the master used the care which the law required of him, he would have known it.   There is a dispute in the testimony as to what the substance was that

fell and injured appellee. He says it was rock and slate. Ritchey says, in answer to the question—What was the substance that fell on Wombacher? "Slate; there was no rock about it; it was more like fire clay." Tragesser, who worked in the same room with appellee, speaks of the substance which fell, as clod.

Mr. Harding, in speaking of the nature of clod, says, "It is a substance that has no stratification." From this testimony the jury might well have found that what fell on appellee was slate, and slate would come within the general term rock, which was the term used in the declaration.

We fail to find in this record any error that requires a reversal of the judgment of the Circuit Court, and the same is affirmed.

*Judgment affirmed.*