## Davenport, Rock Island & Northwestern Railway Company v. Ottilie DeYaeger, Admx.

### Gen. No. 4,279.

1. ORDINANCE—*right to presume obedience of.* Every person who would be benefited by compliance by a railroad company with a valid ordinance, is entitled to the protection that obedience to such ordinance would furnish, and every such person has the right to assume that it will not be violated.

2. INSTRUCTION—*when, pertaining to checking speed of train, is properly refused.* An instruction which tells the jury that it is not the duty of a railroad company to check the speed of its trains at street crossings for travellers, is calculated to mislead the jury, and is, therefore, properly refused where such instruction is offered in a case in which it appeared that the train of the railroad company was running within the limits of a municipality at a speed prohibited by ordinance.

3. INSTRUCTIONS—*propriety of referring to declaration in.* It is proper in the instructions to refer the jury to the declaration.

4. INSTRUCTIONS—*need not repeat.* An instruction is properly refused where its substance is contained in another instruction given.

5. INSTRUCTIONS—*when alleged errors in refusing, are waived.* Where the appellant does not in his opening brief discuss the instructions claimed to have been erroneously refused by the court, but merely

by a generalization insists upon their pertinency and propriety, the court will deem the alleged errors in refusing such instructions to have been waived.

6. INSTRUCTIONS—*must not be argumentative.* Instructions are properly refused where argumentative in form.

7. INSTRUCTIONS—*must not leave questions of law to jury.* Instructions are erroneous which require proof of the " material " allegations of the plaintiff's declaration, without explaining to the jury what are such material allegations.

8. ORDINARY CARE—*when jury may consider instinct of self-preservation in determining whether, has been exercised.* The jury have the right to take into consideration the natural instincts which prompt men to the preservation of life and the avoidance of injury, where an accident has resulted in death, where there was no eye-witness to the accident other than one who, while he saw deceased just prior to the accident, did not look at him all the time and did not observe whether he took any precautions to ascertain the approach of the train which caused his injury.

9. DISMISSAL—*what not ground for ordering a.* The failure of a plaintiff to pay the costs of a former suit brought upon the same cause of action is not ground for ordering the dismissal of one subsequently brought.

10. COSTS—*effect of failure to pay, awarded in former suit upon same cause of action which has been abandoned.* In this case the court intimates that there might be a case of vexatious procedure in bringing successive suits for the same cause of action and then abandoning them which would render it an abuse of discretion for the trial court not to stay the pending action until the former costs awarded against the plaintiff have been paid.

Action on the case for personal injuries. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed March 14, 1904.

LANE & WATERMAN and SWEENEY & WALKER, for appellant.

, W. R. MOORE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On February 2, 1901, Angelus DeYeager was struck and beheaded by a construction train on the Davenport, Rock Island & Northwestern Railway Company, at its crossing over Third avenue in the city of Moline. The administra-

trix of said deceased brought this suit against said railway company for the benefit of the next of kin.   The declaration charged that deceased was exercising due care; that the train was running at a speed greatly in excess of six miler per hour, to which it was limited by an ordinance; that no bell was rung or whistle sounded as required by statute, as said train approached said crossing; that defendant did not bring said train to a full stop before reaching a certain railroad crossing a short distance further on, as required by statute; and that these several acts and omissions were negligent, and caused the death of the deceased, and thereby deprived plaintiff of her means of support; and in the first count it is charged the violation of the ordinance as to the speed of the train was wilful.   Defendant filed the general issue, and there was a jury trial, and a verdict for the plaintiff for $2,750.   A motion for a new trial was overruled, and judgment was entered on the verdict.   Defendant appeals.

The accident occurred about half past six o'clock A. M., as deceased was on his way to his day's work.   It was not yet full daylight.   It was cold, and the witnesses agree that the weather was unsettled.   Some said it was misty, some that it was storming.   The state of the weather interfered with seeing an object at a great distance.   Third avenue runs in an easterly and westerly direction, and the railroad crosses it diagonally running from the northwest to the southeast.   The construction train consisted of an engine headed east, the headlights of which were not lighted, and ahead of it a box car, on the front end of which were two lanterns showing red lights.   Inside the box car was a gang of men going to work.   There was a brakeman but he was inside the car, and not at the brakes, which were on top of the car.   Deceased was working for an ice company.   The tools with which he was to work were on the south side of the railroad in a building near this crossing, and the place where he was to work was on the north side of the railroad.   Deceased came to the building, got his tools and started over the crossing on the street.

An ordinance of the city limited the speed of all other than passenger trains to six miles per hour. There was proof for plaintiff that the train was running ten or fifteen miles per hour at the time of the accident, and some of defendant's witnesses testified to the same thing, while other of defendant's witnesses fixed the speed at six or eight miles per hour, and the engineer of the train practically conceded that he was running in violation of the ordinance. There was proof that no bell was rung or whistle sounded as required by the statute, and other proof that the bell was rung and the whistle sounded. The condition of the proof would not warrant us in disturbing the verdict of the jury, which we construe as a finding that defendant violated both the ordinance and the statute, and was guilty of negligence causing the death of the deceased. Defendant urges that deceased was negligent, and that his negligence contributed to the injury, and therefore there can be no recovery. Crosby, a workman, was a short distance behind deceased. He testified that he heard the train coming and looked and saw it, and that he did not see deceased turn and look towards the coming train, and he thought deceased could have heard it. He, however, further testified that he could not tell whether deceased looked or listened, and that he was not close enough to him to see whether he looked or listened. If deceased looked he may not have seen the approaching train, both because of some obstruction which the witnesses show existed at that point, where the railroad was on a curve, and because it was a misty, stormy morning, and because the train had no headlight; and if he did see it he had a right to rely upon defendant's obedience to the ordinance. B. & O. S. W. Ry. Co. v. Then, 159 Ill. 535. Every person who would be benefited by compliance by a railroad company with a valid ordinance is entitled to the protection that obedience thereto will furnish, and may assume that it will not be violated. I. C. R. R. Co. v. Gilbert, 157 Ill. 354; E. J. & E. Ry. Co. v. Duffy, 191 Ill. 489. Deceased also had a right to expect a bell to be rung or a whistle sounded as any train approached that crossing, and at a

distance so far from the crossing as to give him ample warning. The jury have held he was in the exercise of due care, and the proof would not warrant us in disturbing their conclusion.

Complaint is made of the third and fourth instructions given for plaintiff, because they refer the jury to the declaration. Such instructions have been sustained in many cases, including Mt. Olive Coal Co. v. Rademacher, 190 Ill. 538; Central Railway Co. v. Bannister, 195 Ill. 48; and Chicago City Ry. Co. v. Carroll, 206 Ill. 318. Complaint is made of the refusal of instruction No. 25 offered by defendant. It related to the requirement that deceased should exercise ordinary care for his own safety as he approached the crossing, and the law on that subject was fully and sufficiently stated for the defendant in several instructions which were given. Complaint is made of the refusal to give instruction No. 36 offered for the defendant. It was calculated to mislead the jury in this case, for it says that a railroad company does not have to check its speed at street crossings for travelers. While this is true in a certain sense, yet it is not true as applied to a case where its train is running within the limits of a city at a speed prohibited by ordinance. Complaint is made of the refusal of instructions Nos. 37 to 45, both inclusive, offered by defendant. But all that is said on that subject in appellant's opening brief is that each one was " pertinent and applicable to the case of appellant, but the court refused each and every one, and by so doing denuded the defense made by appellant, and left appellant at the mercy of a prejudiced jury to work its will." We do not regard this as an argument showing that the nine instructions in question should have been given. These refused instructions are not discussed. We are not informed for what reasons it is claimed they should have been given. We are of opinion that because these instructions are not discussed in the opening brief, the error, if any, in refusing them has been waived. But we are further of opinion that they are in the main argumentative and improper; that some of them are errone-

ous because they require proof of the material allegations of the declaration or of the material parts of plaintiff's case, without explaining what parts or what allegations are material; and that so far as said refused instructions state correct propositions of law, those are embraced in other given instructions. Appellant asked four special findings, which the court refused to submit to the jury. Each was upon a mere evidentiary fact. None of them would have been decisive of any issue in the case.

The only error assigned and argued in this case that we regard as of serious importance is the action of the court in giving the 13th instruction requested by the plaintiff. which told the jury, among other things, that in determining whether deceased was exercising due care, the natural instincts prompting to the preservation of life and the avoidance of injury and consequent suffering and pain, may enter into the consideration of the jury. Defendant urges that there was an eye-witness of this accident, Crosby, and that the rule referred to in that part of the instruction just stated is ōnly operative where there is no eye-witness who can describe the conduct of the deceased at the time of and just prior to the accident. That the right of the jury to take into consideration the natural instincts which prompt one to the preservation of life and the avoidance of injury is limited to cases where the accident is not seen by an eye-witness, seems to be indicated in Illinois Central R. R. Co. v. Nowicki, 148 Ill. 29; C. & E. I. R. R. Co. v. Heerey, 203 Ill. 429; and C. R. I. & P. Ry. Co. v. Keely, 103 Ill. App. 205. In C. B. & Q. R. R. Co. v. Gunderson, 174 Ill. 495, and C. B. & Q. R. R. Co. v. Beaver, 199 Ill. 34, it is not stated that that rule is only applicable where no one saw the accident, but the opinion in each of those cases specially notes the fact that no one saw the accident. On the other hand, in B. & O. S. W. Ry. Co. v. Then, 159 Ill. 535, and C. C. C. & St. L. Ry. Co. v. Keenan, 190 Ill. 217, the rule is laid down in general terms that the instincts of self-preservation may be considered in determining whether deceased exercised due care; and there is no suggestion in those cases that no

one saw the accident there, or that the rule is limited to such cases. If the instincts tending to self-preservation should not be considered where there is an eye-witness of the accident, that limitation should only apply to cases where a witness has seen and is able to describe the conduct of the deceased at the time of and just prior to the accident. The mere fact that the eye of a witness may have incidentally rested upon the deceased at the time of and just before the injury, ought not to deprive plaintiff of the presumption arising from the instincts of self-preservation. In the present case, Crosby did not know deceased, and while he says he did not see deceased look and listen, yet he evidently did not look at him all the time as deceased approached the crossing, for Crosby testified he himself looked and saw the approaching train (at which time of course he was not looking at deceased), and that he considered with himself whether he had time to go over the crossing before the train would reach it, and, further, that he was not close enough to deceased to see whether he did look for the train or listen for it, and could not tell whether deceased looked or listened. While, therefore, he saw deceased, he did not look at him all the time, and he did not observe whether deceased took any precautions to ascertain the approach of the train. We therefore conclude that we ought not to disturb this verdict, otherwise just and supported by the proof, because of this expression in the 13th instruction.

Before the trial and when another judge was presiding, various motions were made and ruled upon, of which rulings defendant complains. Defendant first moved to dismiss the suit because of the non-payment of a judgment for costs entered against plaintiff in a former suit for the same cause of action, and that motion being denied, defendant then moved for a rule on plaintiff to pay those costs within a short time to be fixed or that the suit be dismissed, which second motion was granted, and the order afterwards vacated. Then defendant moved for a rule on plaintiff to file security for costs or show cause, which was granted, and that order was afterwards vacated. The failure to pay

costs of the former suit furnished no grounds for dismissing this suit, but at most could only be ground for staying the progress of this suit until such costs were paid, and no such application was made to the court. Again, it was said in Hennies v. Vogel, 87 Ill. 242, though without any discussion of the subject, that such a motion is addressed to the discretion of the Circuit Court, and cannot properly be reviewed on appeal, and our attention is not called to any later contrary decision in this state. There is a line of authorities in other jurisdictions holding that under certain circumstances it is proper for the trial court to stay a cause till the costs incurred by a defendant in a former suit against him for the same cause of action are paid, such as Henderson v. Griffin, 5 Peters, 151; Kentish v. Tatham, 6 Hill, 372; State, ex rel. v. Howe, 64 Ind. 18; McIntosh v. Hoben, 11 Wis. 400, and cases cited in those opinions; and it may be, a case of vexatious procedure in bringing successive suits for the same cause of action and then abandoning them, might be shown, where it would be an abuse of the discretion of the court not to stay the later action till the former costs were paid. But we are not prepared to hold that it was shown plaintiff's course here was vexatious. Moreover, defendant has no interest in the payment of the costs made by plaintiff in the former action, but only of the costs which defendant incurred, and the showing was only of the amount of the total costs in the prior cause and not of the costs made by defendant, or for which defendant was responsible. If the court heard any incompetent testimony upon these motions, that would be immaterial here, unless there was reversible error in the decision of the motions. If our conclusion should be affirmed by the higher court, plaintiff will have abundance of funds with which to pay the costs of the former suit, and defendant can enforce its judgment therefor.

We find no reversible error in the record, and the judgment is therefore affirmed.

*Affirmed.*