## Mary Brennen, Appellee, v. Chicago & Carterville Coal Company, Appellant.

1. EVIDENCE—*when jury may consider instinct of self-preservation.* In an action by a personal representative of one deceased to recover damages, the jury may consider the natural instincts which prompt one to the preservation of life and the avoidance of injury.

2. EVIDENCE—*when allowance of latitude in cross-examination not error.* The allowance of considerable latitude in cross-examination is not error if no information was elicited which was not obtained from other witnesses.

3. INSTRUCTIONS—*need not repeat.* The trial court may properly refuse an instruction the substance of which is contained in another given.

4. INSTRUCTIONS—*must be predicated upon evidence.* An instruction should be refused which is not supported by any evidence in the cause.

5. MINES AND MINERS—*how damages in action by widow ascertained.* While the widow in an action instituted under the Mines and Miners Act is, in any event, entitled to nominal damages, in a proper case, yet the amount of those damages must necessarily depend on the real, actual pecuniary injury to her, caused by the death of her husband, and this cannot be fully determined without ascertaining the amount of pecuniary assistance, by support or otherwise, she has actually been deprived of by the death of her husband.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Williamson county; the Hon. W. W. DUNCAN, Judge, presiding. Heard in this court at the August term, 1908. Affirmed. Opinion filed March 4, 1909.

DENISON & SPILLER, for appellant.

HARTWELL & WHITE and R. T. COOK, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought under the act in relation to Mines and Miners, by appellee to recover damages for the death of her husband, Peter Brennen, which occurred in appellant's mine in Williamson county,

Illinois, under the following circumstances, as disclosed by the proof:

On the date of his death, October 26, 1906, and for some two years prior thereto, Brennen was employed by appellant in its said mine as a pumpman. There was a main entry leading south from the bottom of the shaft and a short distance from where it left the shaft two entries, parallel with each other and a short distance apart, called the first and second east entries, were driven in an easterly direction, from said main entry about 2100 feet. An artificial air current was maintained by forcing the air into the second east entry, where it turned from the south main entry, thence along that entry to the face of the entry, and thence through a cross cut in the partition wall, between the entries, to the first east entry, back through it to the main entry and thence to an air shaft. For this purpose, different openings or cross-cuts had to be made between the two entries, which were closed and new ones made as the entries were driven further in towards the east, as it was necessary to carry the air current with the entries, for the safety of the men working in them. The east cross cut was made 59 feet from the east end of the first entry, and 49 feet from the east end of the second and beyond the cross-cut, deleterious and dangerous gases would form and accumulate for the reason that there was no air circulating at that portion of the entries.

In March, 1906, there had been a squeeze in the two east entries which compelled their temporary abandonment and they had partially filled up with water. Nothing was done towards placing them in working order until the following June, when a pump was installed in room 39 of the first east entry, which was connected with a pipe leading eastward some 320 feet to room 47, where there was a sump or depression, into which the water was collected and from whence it was pumped out of the mine. It was Brennen's duty, and the regular routine of his daily work re-

quired him, to visit all the places in the mines where there were pumps and also all sumps into which pipes extended from the pumps and keep the pipes clear and the pumps in operation. It therefore became necessary for him to go east every day through the first east entry as far as room 47, where the pipe ended at the sump. At the time Brennen received the injuries which caused his death, and shortly prior thereto, the water being practically out of the mine, other employes of appellant were at work, clearing up these entries and preparing them for the resumption of work. In the prosecution of their work such employes took out the stopping at a former cross cut between the two entries near room 41 of the first entry. As a result of this action the current of air, which formerly went east to near the face of the entry as above described, turned through the cross cut where the stopping was removed and thence back out through the first entry making a short current. Those portions of the two entries east of said cross cut being largely deprived of their usual current of air, thereafter partially filled with foul air and deleterious and dangerous gases. It was about 160 feet east from the open cross cut to the sump in room 47, which was a portion of the route necessary for Brennen to travel daily. Brennen appears to have had personal knowledge of the existence of dangerous gases at the face of the entries and it was also shown by the evidence that the mine manager, James Guiney, and one of his assistants repeatedly told Brennen of the existence of such gas and that it was dangerous to go to the face of the entry. Brennen had also been expressly instructed to stop any one he might see about to go up these entries. On October 26, aforesaid, after the men had stopped work, it was discovered that Brennen and an Italian miner named, Spesia, were missing. A searching party was sent into the mine and the dead bodies of the two missing men were discovered near the end of the first east entry, Brennen's body

being found about 77 feet and Spesia's about 50 feet from the face of the entry. Their clothing was torn and burned by an explosion which had occurred in the entry and occasioned their death.

The first two counts of the declaration filed in this case charge the wilful violation of section 18 of the Miners Act, providing for the inspection of the mine by a mine examiner, the noting of the date of his inspection upon the working places, placing of conspicuous marks at places where dangers existed, the reporting of the findings of the examiner to the mine manager, the recording of the condition of the mine in the daily record and the prevention of entrance into the mine by any one until all conditions were made safe. The third count charged a wilful violation of that portion of section 19 of said act which imposed upon defendant the duty of maintaining currents of fresh air throughout said mine for the health and safety of all men employed therein, and of forcing said currents of air in every working place throughout the mine, so that all parts of the same should be reasonably free from standing powder smoke and deleterious air of every kind. The last count charged the wilful violation of that portion of said last named section of said statute, which provides for the construction of cross cuts at certain distances apart, and also for stopping the same in a substantial manner.

The general issue was filed and the trial resulted in a verdict and judgment in favor of appellee for $4000.

Appellant asserts as reasons why the judgment should be reversed, that the verdict was not warranted by the evidence; and that the court erred in the matter of the instructions and in admitting improper evidence on behalf of appellee.

Appellant presented peremptory instructions at the close of appellee's evidence and again at the close of all the evidence, which raised the question whether there was a right of recovery under the evidence in

the case. It contends the court erred in not giving a peremptory instruction to find the defendant not guilty, for four reasons: (1) because appellee failed to prove that deceased was engaged in the performance of his duties or was in a part of appellant's mine where his duties required him to be when he was killed; (2) because the evidence shows affirmatively that when he was killed he was in a part of the mine which was and had been for several months abandoned for use and where appellant owed him no duty to inspect and ventilate; (3) because the evidence shows, at the time Brennen was killed he was himself wilfully violating certain provisions of section 31 of the mining act, in that he had entered a portion of the mine against caution and against the orders and instructions of the mine manager; (4) and even if it should be conceded that appellant did violate the statute as alleged, still Brennen would not have been killed had it not been for his own independent, wrongful and illegal act in entering an abandoned part of the mine against caution and the instructions of his mine manager; that his own, wilful violation of the statute was the proximate cause of his death.

It is conceded that the mine examiner placed no mark of danger at or near room 47 on the first east entry, nor did he place any mark in any portion of said entry to indicate there might be danger from accumulations of gas therein. Neither did he make report of the finding of any accumulations of gas or other dangerous conditions in said entry to the mine manager, nor record the same in the book in which he made his daily record.

Counsel for appellant assert that the mine operator owes the men at work in the mine no duty to inspect, ventilate and otherwise keep reasonably safe, any portion of a mine except that part where the duties of the men require them to work and to pass in going to and returning from their work. They further rightfully claim there was nothing connected with Bren-

nen's employment which under any circumstances required him to go beyond room 47, where the intake pipe ended. Their argument is based upon the theory that Brennen was east of room 47 when the explosion occurred, and fails if that was not the case.

Brennen's body was found some 267 feet east of room 47, and counsel for appellant therefore infer that Brennen must have been east of room 47, at a place where his duties did not call him, at the time the explosion occurred. This however was a question of fact for the jury to determine from all the proofs and circumstances of the case. The proofs show that the explosion was a violent one in that portion of the mine. It appeared from the damage done that the explosion extended down the entry from three to four hundred feet. A loaded car, weighing more than a ton, was thrown off of the track west of the newly opened cross cut near room 41, a two-inch water pipe broken at the mouth of room 47 and brattices, or stoppings in the cross cuts, between the two entries were blown out and timber and other debris thrown across the roadway. It was proved that the first force of an explosion in a mine is usually against the air; that it goes out to meet the air, but that the reaction back towards the face of the entry is a greater moving force than the first explosion and carries an object in its path further; that it is impossible to determine from the position a body or other object occupies after an explosion has occurred, the place it was located at the time of the explosion or the direction from whence it came. It was also proper under the circumstances of this case for the jury, in determining the location of Brennen at the time of the explosion, to take into consideration, with the fact that he knew there was danger beyond room 47, having been warned of it, the natural instincts which prompt one to the preservation of life and the avoidance of injury. D. R. I. & N. W. Ry. Co. v. De Yeager, 112 Ill. App. 537, and cases cited.

Under the facts as shown, we are of opinion the jury could reasonably find, as they must be assumed to have done, that Brennen was at the time the explosion occurred, in that portion of the mine where his duties required him to go, and such being the case he was undoubtedly entitled to the full protection of the provisions of the act in regard to Mines and Miners. The fact that the brattice or stopping at the cross cut near room 41 was out, was known to appellant, its manager and the examiner, and it was further known to them that there was foul air and dangerous gases at the east end of the first east entry and that since the said stopping had been taken out such foul air and dangerous gases were extending down said entry. As the examiner failed to post notices of danger where such gas had accumulated or to make record of the same, and Brennen having continued, under the direction of the mine manager, to do his accustomed work, which required him to visit a point of danger, it was also proper for the jury to find that appellant had violated the provisions of said act.

While appellant complains that the court refused many of its instructions, we find that nearly all of such refused instructions restated in many different forms the same principles of law laid down by its given instructions.

Instruction No. 3, however, was on a different line and told the jury, "a person having a certificate authorizing him to act as mine manager in this state, is also authorized to act as mine examiner and if you believe from the evidence that the defendant's mine manager, James Guiney, on the morning of October 26, 1906, held a certificate authorizing him to act as mine manager in this state, then under the statute, he was also authorized to act as mine examiner." The instruction stated the law correctly but was properly refused, for the reason that Mr. Guiney in his testimony did not claim to have made an examination or record of the condition of the mine, nor is there any evidence in the case that he did so.

The fourteen instructions given by the court for appellant, some of which were of considerable length, seem to have fully covered every phase of the theory upon which appellant's defense was based. The modification by the court of two of appellant's instructions, appears to us to have improved in form the instructions so modified without changing the rules of law stated.

The declaration charged that appellee by the death of her said husband had been deprived of her means of support and the services and expectations of pecuniary aid and support from the deceased. Six of the instructions given for appellee submitted to the jury the question whether she sustained direct damages to or had been injured in her means of support. Appellant contends that these instructions were erroneous for the reason that under the statute appellee could only recover damages for the pecuniary injuries sustained by her through the death of her husband and that in determining such injuries it is improper for the jury to take into consideration the effect of his death upon her means of support. The Miners statute provides that a right of action shall accrue to the widow of a person killed under the circumstances therein mentioned, for the recovery of damages for the injuries sustained by reason of such loss of life. It cannot be that the pecuniary injury sustained under such circumstances, would be the same for all widows, regardless of the question of support or receipt of pecuniary aid from the deceased in his lifetime or that it is sufficient to prove that the plaintiff is the widow of the deceased and that the entire measure of damages must depend upon the earning capacity of the deceased, leaving out of question the fact that he did or did not contribute any of his earnings to the support of the widow. In order to give meaning to the law and show to the jury what actual pecuniary loss has been sustained by the widow, it must be necessary to show whether she did as matter of fact receive

any support or pecuniary aid, or had reason to believe that she would thereafter receive such, from the deceased; and while the widow would in any event be entitled to nominal damages, in a proper case, yet the amount of those damages must necessarily depend on the real, actual pecuniary injury to her, caused by the death, and this cannot be fully determined, without ascertaining the amount of pecuniary assistance, by support or otherwise, she has actually been deprived of by the death of her husband.

We are aware that there is a line of authorities which, under what is known as the Injuries Act, hold that the damages to be recovered by lineal descendants is not affected by the fact that the deceased supported his family or by the number supported; and also that it has been held that the rule as to the measure of damages under the Injuries Act and under the act in relation to Mines and Mining, is the same. That rule however does not seem to be inflexible. This court in the case of Consolidated Coal Co. v. Dombroski, 106 Ill. App. 641, which was a suit brought under the Miners Act, where the plaintiff had averred in a replication that she, the widow of the deceased, was dependent upon him and a demurrer to that replication had been overruled and exception taken, and where evidence was introduced showing the deceased had repeatedly sent his wife money, amounting in all to seven or eight hundred dollars, affirmed the judgment of the court below in her favor.

In Donk Bros. Coal Co. v. Stroff, 200 Ill. 483, our Supreme Court sustained a verdict in favor of a widow, in a suit brought under the Coal Miners' Act, where it was alleged in the declaration that she had been deprived of her means of support.

In the case of C. & A. R. R. Co. v. May, 108 Ill. 288, which was a suit under the Injuries Act, it was said: "Upon the trial appellee was permitted to prove, against the objections of appellant, that the deceased in his life time supported appellee and her children.

In a case of this character, where the action is founded solely upon the hypothesis that the plaintiff, by reason of the husband's death has been injured in her means of support, such evidence is not only admissible but highly proper, indeed almost indispensable, and there is nothing in the cases referred to, sustaining a contrary view.''

The opinion in the case of Penn. Co. v. Keane, 143 Ill. 172, quotes approvingly from the case of C. & A. R. R. Co. v. May, *supra,* and states the rule deducible from the authorities to be ''that it is not competent to show what the pecuniary circumstances of the widow, family or next of kin are, or have been since the decease of the intestate, but that it is competent to show that the wife, children or next of kin were dependent upon him for support before and at the time of his death.''

In St. L. P. & N. Ry. Co. v. Dorsey, 189 Ill. 251, it is said: ''The contention of appellant that it was error to permit the widow to testify that she was supported by the deceased, her husband, is fully answered by the cases of C. & A. R. R. Co. v. May, 108 Ill. 288,'' and other cases mentioned.

In the case of I. C. R. R. Co. v. Baches, 55 Ill. 379, it was held that the support the widow and minor would have been likely to receive, had deceased not been killed, is a fair and no doubt controlling element to be considered in fixing the pecuniary loss sustained. It is the loss of that support which more largely produces the pecuniary injury than any other and hence it is eminently proper that it should be considered.

Under these authorities which we think state the true rule of law, there was no error in giving the instructions complained of, which related to the support received by the widow from her husband in his lifetime. Other objections raised to other instructions given for appellee are of minor importance and do not appear to us to be well founded.

The principal complaint of appellant, concerning the ruling of the court in regard to the evidence, is,

that plaintiff was permitted to testify over its objections, that Peter Brennen, the deceased, supported his family with his wages, and that he was a good provider. The evidence on that line stopped right there however, and there was no proof in the evidence tending to show that he left any children or that there was any surviving member of his family but his widow. The case differs from that of St. L. P. & N. Ry. Co. v. Rawley, 90 Ill. App. 653, cited by appellant, where the widow was permitted to testify that deceased supported her and her children, followed by a detailed statement of the number and ages of the children. What we have above said however in regard to the line of authorities upon substantially the same question raised by the instructions, will apply to the objections here made to the evidence in regard to the support, and for the same reasons we think there was no error in permitting the questions above mentioned, to be asked and answered.

Objection is also made to certain questions permitted by the court to be asked by counsel for appellee on cross-examination of James Guiney, a witness for appellant, for the reason that they were foreign to the examination of said witnesses in chief. It is true that considerable latitude was allowed by the court in this cross-examination, but as the questions and answers elicited no information which was not derived also from other witnesses and as the matter was largely within the discretion of the court, it cannot be said that there was any serious error committed in permitting the examination to be so conducted.

Upon the whole case we are of opinion there was evidence sufficient to sustain the finding of the jury and that no reversible error was committed in the trial of the cause.

The judgment of the court below will therefore be affirmed.

*Affirmed.*