## James A. Kirk et al. v. Peter Senzig.

1. MASTER AND SERVANT—*Risks of the Employment.*—Where an employe is directed to do a particular piece of work, he has a right to assume that his employer will see to it that the place is reasonably safe while the work is being done, or until he is warned or has reasonable cause to believe, or by the exercise of ordinary care and diligence ought to know that it is not so, and assumes the risk himself, or unless the danger is within the obvious scope of the employment as the business is carried on.

2. SAME—*Liability for Injuries Received by Servant—Vice-Principal.*—When the negligent act complained of is the direct result of the exercise of the authority conferred by the master upon the overseer over his co-laborers, the master will be liable; such overseer is not the fellow-servant of those under his charge with respect to the exercise of such power, for no one but himself is clothed with authority to command the others. When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey under peril of losing their positions, and such commands are, in contemplation of law, the commands of the master, and hence he is held responsible for the consequences.

3. VERDICT—*How Ascertained in the Appellate Court.*—An appellate court can ascertain the finding of a jury only from the recorded verdict.

4. SAME—*Power of the Jury to Amend It.*—Until the verdict is recorded, it lies in the power of the jury to alter, amend, or correct it, but not afterward.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1898. Affirmed. Mr. Justice HORTON dissenting. Opinion filed December 23, 1898.

This is an action to recover damages for personal injury. The appellee was a laborer employed in the basement of

the factory building of appellants, who are manufacturers of soap. His ordinary employment was to assist one Schultz, another employe, from whom he received orders. In filling frames or boxes with fresh soap, and loading it upon an elevator, a certain quantity of the newly-made soap is "spilled" over the floor, and in cleaning up, some of it runs into the bottom of the elevator shaft, where, during the night, it settles as the water is drained away. In the morning one of the first duties of the appellee had been, for some months prior to the accident, to gather up this residuum of soap. In this he was sometimes assisted by a third employe, one watching for the descent of the elevator while the other removed the soap from the bottom of the shaft. The morning in question the third man was not present. Schultz directed appellee to clean out the soap from the shaft as usual, and went off to adjust belts in readiness for starting the machinery. He says that he told appellee "to look out for himself, and be careful about the elevator," and that he, Schultz, would go and put the belts on the wheels. Schultz did not, however, notify the elevator boy, as he had done at some other times, that he had directed appellee to go down under the elevator that morning. He testifies that "the many wheels and the machinery" make such a noise that the elevator can not be heard. While appellee was bending down picking up soap the elevator came down upon him. He sued to recover for injuries alleged to have been thus caused. The jury found in his favor, and, after a remittitur, judgment was entered, from which this appeal is prosecuted.

REMY & MANN and LEE & LAWRENCE, attorneys for appellants; JOSEPH B. MANN and BLEWETT LEE, of counsel.

BLAISDELL & McCASKILL, attorneys for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

Appellants contend that appellee voluntarily assumed the risk of the injury of which he complains.

On the whole evidence we do not think it at all clear that appellee intended to assume the risk of injury from the descent of the elevator. The foreman, Schultz, testifies that he had at other times told the elevator man that appellee was in the bottom of the shaft. On this occasion he did not do so. There is no sufficient evidence that appellee was aware of his failure in this respect. He was told to "watch out for himself." Appellee says the elevator was at "the fourth or fifth floor" when he "commenced picking up the soap." He may have been warranted in supposing that Schultz would himself keep watch of the descent of the elevator, so as to give the usual warning to the man in charge. If so, then appellee was not so fully advised that he can be said to have taken "the chance of obvious and known danger," as was the case in W. G. T. Works v. McGee, 58 Ill. App. 250, 252, cited by appellants' counsel.

It is further contended that appellee "was guilty of contributory negligence, in going under the elevator and continuing at work without notifying the operator of the elevator of his presence there."

If it be true, as there is testimony tending to show, that when appellee was directed to and did begin his work in the shaft, the elevator was at the fourth or fifth floor, that the noise of the machinery was such that the elevator could not be heard, and that he had been at work there "about ten minutes before the elevator came down," then to have notified the operator of his presence in the shaft would apparently have required a constant watchfulness during that time incompatible with the work he was ordered to perform. To pick up the soap in the bottom of the shaft required him to bend down, as he says he was doing. He testifies that the elevator came down without noise, or "still," as he puts it, and struck him "all at once." Even if it be true that appellee forgot all about the elevator, and that he thought he could clean out the pit before the elevator came down, yet to have watched for it during this period would have required a practical disobedience of the order he had

received to remove the soap.   When an employe is directed to do a particular piece of work, he has a right to assume that the employer will, as in duty bound, furnish him a reasonably safe place, or will see to it that the place is reasonably safe while the work is being done, unless he is warned or has reasonable cause to believe, or by the exercise of ordinary care and diligence should have known that it was not so, and assumes the risk, or unless the danger is within the obvious scope of the employment as the business is carried on.   Cribben v. Callaghan, 156 Ill. 549, 552, and cases there cited.

The descent of the elevator upon appellee was not such a hazard as was necessarily incident to his employment at the time, or one which the evidence shows he necessarily had reasonable cause to anticipate, unless he was aware of the failure of Schultz, on this particular morning, to notify the operator of his presence in the shaft.   Of this, as has been said, there is no sufficient evidence.

It is said that the negligence of Schultz, if any, was that of a fellow-servant.

It is conceded that Schultz had authority to give appellee orders, and that he directed him to remove the soap from the elevator shaft.   But it is said that his negligence, if any, in not watching for the descent of the elevator, and in failing to give appellee warning, was in no respect different from what it would have been in the third man who sometimes watched for appellee when engaged in this work.   We can not agree with this contention.   " When the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable.   In such case he is not the fellow-servant of those under his charge, with respect to the exercise of such power, for no one but himself, in the case supposed, is clothed with authority to command the others.   *   *  *   When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey under peril of losing their situations, and such commands

are, in contemplation of law, the commands of the company, and hence it is held responsible for the consequences."  C. & A. R. R. v. May, Adm'x, 108 Ill. 288, 299.

The authority to command, which was exercised by Schultz, can not be separated from the obligation to protect the employe from the consequences of negligence in the exercise of such authority and in his obedience thereto.

It is further contended that it was the duty of the court to have amended the verdict in accordance with a motion made by appellants' counsel.  The form of the verdict was:  "We, the jury, find the *defendant* guilty," etc.  On the record, however, it appears, "We, the jury, find the *defendants* guilty," etc.

In Lambert v. Borden, 10 Ill. App. 648, the verdict of the jury found the "*defendants*" guilty.  As recorded by the clerk it read, "find the defendant" guilty.  The court said: " The question arises whether we can have recourse to the paper returned into court by the jury as their verdict, for the purpose of correcting or supplying any omissions or imperfections in the verdict, as the same appears of record. The uniform current of authority seems to be that an appellate court can ascertain the finding of the jury from the recorded verdict, and from that alone."  See also cases there cited.

The verdict as recorded is the only proper verdict.  The court committed no error in refusing to amend the record so as to make it express what could not by any reasonable intendment be presumed to have been the actual intent of the jury, upon a motion made some weeks after the trial, and after the final termination of all connection of the jury with the cause.  Until the verdict was recorded, it is said, " it lies in the power of the jury to alter, amend or correct their finding," but not afterward.  A. & E. Ency. of Law, title " Verdict," Vol. 28, p. 374.

Our statute provides that " it shall be sufficient for the jury to pronounce their verdict in open court, without reducing the same to writing, and the clerk shall enter the same in form under the direction of the court."  Rev. Stat., Chap. 110, Sec. 57.

For aught that appears, the written verdict may have been corrected by the jury *viva voce* in open court, and so made to read as it appears of record. It is correct in form as recorded, and the judgment is in accordance therewith.

It is urged that the judgment of one thousand dollars is still excessive, notwithstanding the remittitur of fifteen hundred. We have examined the record with care, as in duty bound, " to ascertain whether a verdict so bad in part should be sustained as to the rest of it." W. C. St. R. R. Co. v. Johnson, 69 Ill. App. 147–151.

While the testimony is not as full upon the nature and extent of the appellee's injuries as might be desired, we can not say that the amount is excessive.

The judgment of the Superior Court is affirmed.

Mr. Justice HORTON does not concur.