Norton Brothers v. Nadebok.

---

## Norton Brothers v. Emil Nadebok.

1.   APPELLATE COURT PRACTICE—*Reversal Without Remanding.*—Where a case has been tried by a jury in the court below, the only ground for a reversal without a remanding order, is the lack of evidence fairly tending to support the verdict.

2.   SAME—*Province of the Court to Determine the Preponderance of the Evidence.*—In determining the question as to whether the refusal of the trial court to take the case from the jury was error, it is not within

the province of the Appellate Court to weigh the evidence and to determine on which side is the preponderance; it is limited to the inquiry as to whether there is any evidence fairly tending to support the plaintiff's case.

3. FELLOW-SERVANTS—*When Employes are Not.*—Where one of two employes has authority to direct the other, although they are co-operating in their work, they are not to be regarded as fellow-servants; the one in exercising his authority of direction becomes the vice-principal of the other and their employer is liable for his conduct.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed December 20, 1900.

R. S. THOMPSON and C. L. JENKS, JR., attorneys for appellant.

JAMES M. SHEEAN and J. W. KASTE, attorneys for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment recovered by appellee against appellant for personal injuries alleged to have occurred by reason of appellant's negligence. The declaration consists of three counts. The second count is the only one which we think it important to consider. It is as follows:

"For that whereas, also, heretofore, to wit, on the day and year aforesaid, said defendant was in possession and control of a certain factory in said county of Cook for the manufacture of tin cans, and in said factory was then and there using divers machines and devices for the manufacture of the various component parts of such cans; and among said machines was a certain machine commonly known and called a ' body-maker,' by which was shaped from sheets of tin the form of the completed can; and the operation of said body-maker was then and there in charge of one James Banning as the representative of said defendant, who then and there had control, direction and supervision of the work of the plaintiff, and was not then and there a fellow-servant of said plaintiff; and at the time and place aforesaid, the plaintiff was in the employ of the

defendant to assist in passing the partially completed cans through the body-maker aforesaid, and was then and there subject to the control and direction of said James Banning, who was then and there the representative of said defendant in that behalf; and while in the line of his duty as such employe and in pursuance of an order then and there given him by said company through its said representative, James Banning, the plaintiff inserted his hand between certain blades in said machine known as a body-maker, for the purpose of removing therefrom a can which had become fastened therein, using in so doing reasonable care and caution for his personal safety; and while plaintiff's hand was so inserted in said machine at the direction of said defendant, the defendant, through its representative aforesaid, who was not the fellow-servant of 'plaintiff, wrongfully, carelessly and negligently started said machine known as a body-maker and thereby caused said blades thereof to descend upon plaintiff's right hand and cut off the fourth finger of plaintiff's hand and crippled and mangled the remaining fingers and thereby permanently impaired the usefulness of said hand, and did thereby, through the negligence aforesaid, cause the plaintiff great pain and suffering, and did prevent him from pursuing his usual vocation, and did deprive him of his means of support, and did cause him to lay out and expend, necessarily, in endeavoring to be cured of said injury, a large sum of money, to wit, the sum of two hundred dollars."

The facts as to the manner in which the injury occurred are stated substantially correctly by appellant's counsel thus:

" There is no dispute as to the manner in which Nadebok was injured. A person by the name of Banning was operating a machine known as a ' body-maker.' He had charge of the machine, starting and stopping it by means of a lever attached to a friction clutch connected with overhead shafting. He ' fed ' into the machine oblong pieces of tin called ' blanks,' which were by the machine bent around a ' horn,' the sides hooked together and thus formed into cylinders, constituting the bodies of tin cans. Hence the name of the machine, ' body-maker.' The ' horn' was at the back part of the body-maker, and Banning, when engaged in feeding in the ' blanks,' stood or sat in front of the machine. The cylinder-shaped product of the body-maker fell from a horn into a chute and from the chute into a bin. The appellee, Nadebok, was engaged in carrying these

' bodies' in a basket to another machine which soldered the side seams. One of the pieces of tin which Banning had fed into the body-maker became caught in some way at or near the horn. Banning stopped the machine by means of the lever, and asked Nadebok, who was behind the machine putting the 'bodies' into a basket, to take out the 'catch,' as pieces of tin which chanced to become caught in the machine were called. Thereupon Nadebok, while the machine was at rest, put his hand into it for the purpose of pulling out the 'catch,' and then Banning, before Nadebok had withdrawn his hand, pulled the lever and set the machine in motion. Nadebok's hand was caught and crushed between the ' horn' and the portion of the machine which came up against it."

The appellant was engaged in the manufacture of tin cans, and Banning was one of its employes. Appellee had worked in appellant's factory from May, 1892, till November, 1896, when the injury occurred, and was eighteen years and two months old at the latter date.

Appellant's counsel, in their printed argument, say :

" In this court we seek only a reversal of the judgment, *without remanding*, and therefore we rely here only upon those assignments of errors which are germane to that purpose; all others being waived."

We infer from this language, used by competent counsel, that appellant prefers an affirmance of the judgment to another trial, in case we should conclude from the entire record, in the absence of such waiver of errors, that the judgment should be reversed and the cause remanded.

The cause was tried by a jury; therefore the only ground for reversal without remanding would be that there was no evidence fairly tending to support the appellee's case.

At the close of the appellee's evidence, and also at the close of all the evidence, appellant moved the court to instruct the jury to find the defendant not guilty and presented to the court an instruction to that effect, to be given to the jury. The court refused to take the case from the jury, and the question to be decided is whether such refusal was error. In determining this question it is not within the province of the court to weigh the evidence and to determine on which side is the preponderance; the court is lim-

ited to the inquiry whether there is any evidence fairly tending to support the plaintiff's case, any " evidence upon which the jury could, without acting unreasonably in the eye of the law, decide in favor of the plaintiff." Offutt v. Columbian Exposition, 175 Ill. 472; Rack v. C. C. Ry. Co., 173 Ill. 289; Siddall v. Jansen, 168 Ib. 43; Roberts v. C. & G. T. Ry. Co., 78 Ill. App. 526, and cases cited pp. 529 and 530.

In Rack v. C. C. Ry. Co., *supra*, the court, passing on a motion to instruct the jury to find the defendant not guilty, say :

" In considering the propriety of such an instruction, we have nothing to do with any question as to the preponderance of the evidence, or the credibility of the witnesses, or the force to be given to the evidence having a tendency merely to impeach the veracity of the witnesses. The only question is, whether any evidence was given which, if true, would have tended to support a verdict for plaintiff."

Appellee testified that on the morning of the injury he had been at work piling tin in another part of the factory, and that Magee, an assistant foreman of appellant, told him to go over to the machine in question and take cans from the chute; that he had never worked at the body-maker until the day he was injured; that several catches occurred, and Banning, at each time of such occurrence, told him to take the catch out; that on one of these occasions he said to Banning, " Why can't you take it out ? " to which Banning answered, " Take it out; you have got to do what I tell you."

Emil Steumer, witness for appellee, testified that he was in appellant's employ about ten years, including the time appellee was injured; that in the manufacture of cans such as were being manufactured at the time of the injury, two men are engaged at the machine, a feeder and a helper; that the duty of the feeder is to feed the tin into the machine and run the machine, and the duty of the helper " is to take the cans away and do whatever the feeder tells him to."

Weiland, appellee's witness, testified that he worked for appellant eight years, and left its employ about six months

before the trial; that the operator is in charge of the body-maker, and that he and the foreman give the helper direc-tions as to what he is to do. This witness also testified that on the day when the injury occurred, he heard Banning on one occasion tell appellee to hurry up and take a catch out, and that he, witness, asked appellee why he did it, and appellee said, " I have to take them out."

Kuehn, appellee's witness, testified that he worked for appellant eight years, but had quit its employ; that he had worked on the machine in question as helper when one Schmidt operated it, and that Schmidt told him to take out catches. It appears from the appellee's testimony that a catch can be taken out without danger when the machine is at rest.

Appellant's counsel insist that the evidence for appellee shows clearly that he and Banning were fellow-servants and therefore there can be no recovery. If it was the duty of appellee to obey the directions of Banning, as appears from the foregoing evidence, then it is a necessary inference that Banning was authorized by appellant to direct appellee, because otherwise it would not have been appellee's duty to obey him. If Banning had authority to direct appellee, then, notwithstanding they were co-operating in the work, Banning, in exercising his authority of direction, was the vice-principal of appellant, and appellant is liable for his conduct in the premises. C. & A. R. R. Co. v. May, 108 Ill. 288; Pittsburg Bridge Co. v. Walker, 170 Ib. 550; Met. El. R. R. Co. v. Skola, 183 Ib. 454; Kirk v. Senzig, 79 Ill. App. 251.

In C. & A. R. R. Co. v. May, *supra*, the court say:

" Where the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable." Ib. 299.

To the same effect are the other decisions cited. See, also, City of Chicago v. Cronin, Chicago Law Journal of November 23, 1900, p. 300.

Banning, in the exercise of his authority as vice-prin-cipal, ordered appellee to take the " catch " from the

machine, and, having so ordered, it was his clear duty to refrain from starting the machine while appellee was engaged in obeying his order.  The case is precisely the same, in law, as if the superintendent or foreman of the factory had given the order, and while it was being executed had started the machine, and thus injured appellee.  We are of opinion that the evidence for the appellee fairly tended to support his case, and therefore that the court properly refused to take the case from the jury.  If the inquiry were not limited, as heretofore stated, by appellant's waiver of assignments of error, thus excluding consideration of the question whether appellee's case is supported by a preponderance of the evidence, our conclusion might be different; but the inquiry being limited by such waiver to the single question whether there is any evidence fairly tending to support appellee's case, we can not do otherwise than affirm the judgment.

The judgment will be affirmed.