## JOHN WHITTAKER

### v.

## JAMES COOMBS.

1. MASTER AND SERVANT.—The relation of master and servant can never imply an obligation on the part of the master to take more care of the servant than he may reasonably be expected to take of himself.

2. NEGLIGENCE.—Where the evidence showed that appellee was not employed for any special purpose but performed different kinds of labor doing whatever he was told to do, and the superintendent telling him to couple cars, he did not inform the superintendent that he was unskilled and ignorant of the mode of coupling cars but went to work coupling the cars from the inside instead of the outside of the curve, which was far more dangerous, and was injured. *Held*, that appellee did not use the care which a reasonably prudent and discreet man would.

APPEAL from the City Court of East St. Louis; the Hon. WILLIAM P. LAUNTZ, Judge, presiding. Opinion filed April 18, 1884.

Mr. JOHN B. BOWMAN, for appellant; that appellee did not use due care and caution, cited Penn. Co. v. Lynch, 90 Ill. 333; Hopkins v. I. & St. L. R. R. Co., 78 Ill. 32.

Mr. M. MILLARD, for appellee; cited Lalor v. C. B. & Q. R. R. Co., 52 Ill. 401; C. & A. R. R. Co. v. Murphy, 53 Ill. 339; C & A. R. R. Co. v. May, 108 Ill. 288.

CASEY J. This was an action on the case instituted by appellee against appellant in the City Court of East St. Louis. The material averments in the declaration are: That appellee was in the employ of appellant and engaged to assist the servants of appellant in unloading cars and filling an ice house, as a common laborer and for no other purpose. That while so regarded the superintendent of appellant directed him to

couple cars, which were being carelessly pushed together by other servants of appellant, well knowing that appellee was unskillful and unable to perform such service without incurring danger of personal injury. That while he was attempting to couple said cars with due care and diligence, his right hand was unavoidably caught between said cars and crushed, whereby he lost two of his fingers. That he paid out $250 for medical attention, etc. The question for consideration is as to the sufficiency of the testimony to sustain the averments in the declaration. As to the employment of appellee, he states in his testimony that he went to the place of business of appellant in search of work, and was asked if he wanted to go to work. Appellee replied that he did, and was told "to get a hook and go to work." Appellee did whatever he was directed to do. Afterward he was instructed to work at the elevator, and he did so. Appellee considered it his duty under his employment to do whatever he was told to do. When he was directed to make the coupling he did not inform the superintendent that he had never made a coupling before, or that he was unskillful or inexperienced in that business.

This is substantially the statement of appellee as to the character of his employment. We have carefully examined the record and have been wholly unable to find any evidence tending to show that the cars were being carelessly pushed together; and there is no evidence whatever in the record tending to show that the superintendent of appellant knew that appellee was unskillful or inexperienced in the mode of coupling cars. As to the averment of care or diligence in the declaration, appellee in his testimony states that there was a very bad curve in the railroad at the point next the platform on which the cars were unloaded. That he went there by direction of Superintendent Hamilton to couple the cars; that he went in on the wrong side; that he went in on the inside of the curve; and in another place in his testimony he states in substance: "If I had not got in on the wrong side I would not have got hurt. If I had gone in on the other side I would not have got my fingers hurt; the outside of the curve went straight by the platform; there was ample room to

Whittaker v. Coombs.

stand between the platform and the cars; the coupling could have been made from the outside and if it had been made from there I would not have got hurt."

It seems clear from this and other testimony in the record, that appellee was employed especially to aid in filling the ice house of appellant.

The ice was brought to the platform adjoining the ice house on the cars; the cars were left there by the engine. As they were unloaded the empty cars were pushed down the track and loaded cars pushed up to the platform. For the purpose of facilitating the work, when the cars were unloaded and the ice put in the house, the superintendent had the men clean up the platform and couple the empty cars together. Opposite the platform there was a considerable curve on the railroad track. The outside of the curve being against the platform the iron deadwoods of the cars would come together on the inside sooner than on the outside of the curve, and sooner than the drawheads, making the inside a much more dangerous place from which to couple the cars, as stated by appellee. At the time of the injury to appellee he had been several days in the employ of appellant; was two or three days managing the elevator. The cars had been unloaded, the ice put in the house. Some of the men were pushing the cars together, and appellee, who had been shoveling ice off of the platform, was told, as he states, to couple the cars. No objection was made to this part of the work by appellee, or as to that by any of the men. Considering all this taken in connection with the sworn statement of appellee, that he performed different kinds of work there, that he did whatever he was told to do, and that he was not employed for any special purpose, we are not prepared to say but that pushing and coupling the empty cars may not have been a part of the employment of appellee. However that may be, it is perfectly clear that there is no evidence in the record that the superintendent of appellant knew that appellee was unskilled or ignorant of the mode of coupling cars. If that was true, it was the duty of appellee to advise the superintendent of that fact. This is surely not more than might be and ought to be

expected of a reasonably prudent man—one who would take ordinary care of his own safety. If he failed and neglected to do so, and was injured as charged in the declaration, whose fault was it? The fact that he was inexperienced in that business, so far as the record shows, was known only to himself, and that important fact he concealed, or at least failed to make known.

It is fair to presume that if he had made the facts known to the superintendent, some other and more competent one of the laborers would have been selected to couple the cars together.

But whether that is a fair presumption or not, it would have shown an effort on his part to take proper care of himself—such care as an ordinarily prudent and discreet man would exercise. If, after informing the superintendent of his want of experience, he had still been directed to couple the cars, and in doing so at the same time he was using proper care, he was injured, there would have been but little question of his right to recover. If, while appellee was engaged at the elevator of appellant, he had discovered that the machinery was defective or dangerous, it would clearly have been his duty to notify appellant of the defect, and for the same reason it was his duty to notify appellant of his ignorance as to the proper and safe mode of coupling cars. Was appellee using proper care and diligence at the time of the injury, that is, such care as a reasonably prudent and discreet man would use for the safety of his person? If not, there can be no recovery in this case. As above stated, appellee, in his testimony, shows that he did not inform the superintendent of his unskillfulness. He further states that he went between the cars on the inside of the curve to couple them; that the inside was much the more dangerous place; and he states that he would not have been injured if he had done the coupling from the outside of the curve. Thus it is seen that appellee exposed himself to unnecessary danger and peril. He was not directed to couple the cars from inside the curve. In fact the testimony of several witnesses shows that he was advised by one of the foremen of appellant that it was dangerous on the

inside. Appellee says that he did not hear the warning, though it was heard by persons in his immediate vicinity. Apart from that we can not think that appellee at the time of the injury was using such care as a reasonably prudent man would use under like circumstances. Certainly it does not require much skill or practice to advise an ordinarily intelligent man that there was more danger in coupling the cars from the inside than from the outside of the curve. It would not require any great amount of experience, if any at all, to learn that fact. The relation of master and servant can never imply an obligation on the part of the master to take more care of the servant than he may be reasonably expected to take of himself. Priestig v. Fowler, 3 M. & W. 1.

Taking the statement of appellee as true, if he recovers a judgment in this action it would seem to be rewarding him for his own negligence rather than compensating him for a loss sustained by the negligence of another. Penn. Co. v. Lynch, 90 Ill. 333; Camp Point Mfg. Co. v. Ballou, adm'r, 71 Ill. 417; Lansing v. N. Y. C. R. R. Co., 49 N. Y. 534; Gibson v. E. R. R. Co., 63 N. Y. 453.

It is insisted by the learned counsel for appellee that the case of Lalor v. C., B. & Q. R. R. Co., 52 Ill. 401, is " directly in point." We can not agree to that proposition. In Lalor's case, it was averred in the declaration that the deceased was employed for a special purpose, that is, to load and unload cars; that while so engaged he was ordered by the foreman to couple and connect a freight car with other cars attached to a locomotive, contrary to the special agreement; that the deceased was unused and inexperienced in coupling cars, which fact was well known to the foreman; that while coupling the cars, the engine was so carelessly managed as to bring the cars together with great force, and he was crushed to death.

To this declaration a demurrer was sustained in the circuit court. The demurrer admitted each of these allegations to be true, and, as remarked by the Supreme Court, "they make a strong case"; the law would be lamentably deficient if it did not afford a remedy in such a case. It is somewhat diffi-

cult to see how this case is "in point," when these strong allegations in the declaration were admitted to be true, and when in the case before us the averments are not so strong, where they are all denied, and in our judgment not sustained by the evidence. We have carefully examined the cases of the C. & A. R. R. Co. v. Murphy, 53 Ill. 339, and C. & A. R. R. Co. v. May, adm'r, 108 Ill. 288, to which we have been referred by counsel for appellee, and find that, in our judgment, they do not conflict with the views herein expressed.

For the reasons given, the judgment of the City Court of East St. Louis is reversed and the cause remanded.

Reversed and remanded.