## OLSEN v. TRIANGLE MINING CO.

No. 2979.   Decided April 27, 1917.   Rehearing denied October 6, 1917.   (167 Pac. 813.)

1. PLEADING—MATTERS IN ISSUE UNDER PLEADINGS—IMMATERIAL EVIDENCE. While it was not material whether defendant was an owner of the mining property where plaintiff was rendering services at the time of the accident, where ownership was alleged by plaintiff and denied by defendant the court did not err in allowing defendant to show that its interest in the property was a leasehold. (Page 527.)

2. MASTER AND SERVANT—HAZARDOUS UNDERTAKINGS—DUTY TO WARN. If plaintiff was not skilled in the use of powder in blasting, he should have informed defendant mining company thereof, as it had the right to assume that plaintiff in offering his services had sufficient knowledge and skill. (Page 528.)

3. MASTER AND SERVANT—RULES—HAZARDOUS UNDERTAKINGS. A master is not justified in conducting a hazardous and complicated

business without some system of rules and regulations calculated to lessen the risks his servants will necessarily incur while engaged in their employment. (Page 528.)

4. MASTER AND SERVANT—RULES—HAZARDOUS UNDERTAKINGS. The rule that a master is not justified in conducting a hazardous business without some system of regulations is not applicable where a servant sufficiently matured in years, experienced, and competent is engaged in the performance of all the duties attending the work. (Page 528.)

5. MASTER AND SERVANT—ACTION FOR INJURY—EVIDENCE—SUFFICIENCY. In an action by an employee for injuries sustained while engaged in blasting, held under evidence that the promulgation of rules by the master would not have avoided the accident. (Page 529.)

6. MASTER AND SERVANT—DUTY TO PROMULGATE RULES—NEGLIGENCE. In the absence of evidence showing that rules would be useful or feasible under the circumstances, the master cannot be found negligent in not having promulgated them.[1] (Page 529.)

7. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—EVIDENCE. In an action for injuries due to the explosion of a blast, held that plaintiff failed to do the things and take the precautions for himself that miners generally do while engaged in their work. (Page 530.)

8. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—EVIDENCE—SUFFICIENCY. In an action by a mining employee for injuries due to the explosion of a blasting charge, evidence held insufficient to show negligence of the employer contributing to the injury complained of. (Page 530.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie*, Judge.

Action by Victor Olsen against the Triangle Mining Co., a corporation.

Judgment for defendant. Plaintiff appeals.

AFFIRMED with costs to respondent.

*M. E. Wilson* and *J. C. Wood* for appellant.

*King, Nibley and Farnsworth* for respondent.

CORFMAN, J.

---

[1]*Fritz* v. *Electric Light Co.*, 18 Utah, 493, 56 Pac. 90; *Stone, Adm'r.* v. *Union Pac. R. Co.*, 35 Utah, 305, 100 Pac. 362.

This was an action brought by plaintiff against the defendant to recover damages for personal injuries alleged to have been sustained by him while in the employ of the defendant. In substance, the allegations of the complaint are: That the defendant, Triangle Mining Company, is a corporation engaged in working a mine at or near Alta, Salt Lake County, Utah, and that on the 19th day of August, 1915, plaintiff was in the employ of the defendant working as a miner in one of the underground workings of its mine; that at said time plaintiff was twenty-one years of age, inexperienced in the use of powder for blasting rock in mines, and unacquainted with and did not appreciate the dangers incident thereto; that he did not know the kinds or quality of powder; that defendant knew or might have known by ordinary care, of plaintiff's age and inexperience concerning powder and the dangers attending the use of the same; that on the said 19th day of August an explosion occurred in defendant's mine destroying one of plaintiff's eyes and otherwise injuring him; that said explosion was occasioned by reason of the negligence of defendant in failing to adopt a safe system in carrying on its work of blasting, in failing to use powder of recent manufacture, in using old rotten powder that would not readily explode unless struck with a pick or other instrumentality, in failing to furnish plaintiff with a reasonably safe place in which to do his work, and in failing to properly instruct him concerning the dangers incident to his employment. The answer admits the employment of plaintiff as a miner, and that he suffered injury to one of his eyes; denies the other allegations of the complaint; and pleads affirmatively that the injuries complained of were the result of plaintiff's own negligence and that he voluntarily assumed the risk of injury. The trial was to a jury, resulting in a verdict, "no cause of action," on which judgment was entered. Plaintiff appeals.

Numerous errors are assigned on appeal, but we will here discuss only such as are urged and apparently relied upon, by plaintiff for reversal, viz. error in the admission of testimony during the trial, prejudicial remarks of the trial court

in the presence of the jury, errors of the trial court in giving of certain instructions, and errors of the trial court in refusing to give certain instructions requested by plaintiff.

Preliminary to his several contentions for a reversal of the judgment and his discussion in detail of the errors assigned by plaintiff in his brief, counsel for plaintiff contends that evidence was given at the trial in support of the allegations of the complaint, as follows:

"To support the allegations of the complaint the plaintiff offered evidence tending to show his inexperience; tending to show that the defendant operated its mine without any system or rule in regard to blasting; that it used old powder which would not readily explode, and that the place was unsafe by reason of this lack of system and want of inspection on the part of defendant; that no rule was adopted by the defendant requiring a count to be kept of the number of charges inserted and the number of charges exploded; that the defendant permitted and caused another of its servants to work in close proximity to the plaintiff and permitted the charges inserted by the plaintiff and the other servant to be exploded so that no count could be and so that the plaintiff could not ascertain whether all of the charges which he had inserted had exploded or not.

"As to the powder, evidence was offered to show that sticks of giant powder of a manufacture of 1910 were furnished by the defendant to the plaintiff, and that he was required to use the same."

In the consideration of many of the errors assigned by plaintiff, we will have occasion to advert to the evidence of the plaintiff and his witnesses; and at the outset we will set forth some of plaintiff's evidence bearing on the issues as disclosed by the record.

The plaintiff testified at the trial that he was twenty-two years of age on the 16th day of November, 1916; born in Finland, came direct to Utah, about May 22, 1913; had never worked in mines before; started mucking in the Horn Silver mine at Frisco; worked there three months, mucking all the time; went from there to Eureka; worked there for the Yankee Mining Company about nine months as a mucker;

also worked for the Little Chief Mining Company about fifteen days; went from there to Alta and was there over a year; worked as a mucker and mined about three weeks; from there went to the Cardiff mine; was mucking there, and mined for a while; then went to the Triangle Mining. Company about July 28, 1915, and worked there as a miner:

"I had used some powder; when I began to use powder they told me not to tamp the holes hard as they would explode as I was loading. I have heard men say, 'If you drill into a missed hole it will explode.' Have never used powder, except as stated here when I was mining. I applied to the foreman, Gus Wilson, for a job. He showed me the place and told me to start in and work there in the face of the drift. He said, 'You pick this loose here and muck it back a little, and get some powder in the blacksmith shop, and drill some holes and blast it,' but did not say anything more. I drilled the holes, put in the powder and blasted. Used to get the powder in the morning. The box was close beside the hoisting machine there in the storeroom. It was the only box there. The box looked like a new box. Never paid any attention whether the sticks were old or new. John Nube worked there a few days. We shot once a day, at the end of the day. When I was alone I did not keep account when the shots went off. Both got powder that day out of the storeroom out of this box mentioned. He had about the same number of holes I had. They were discharged at the same time. We could not count the explosions. They all went together; that is, his shots and mine. We came back next morning. I started to pick down. I could not see any missed hole. Had only struck with the pick once or twice before I saw a light and the explosion followed. At the Yankee mine, I saw the face of the drift where the miners were working hundreds of times; saw the miners put in holes and load the holes; put in the fuse and caps; saw those a great many times. When a man has a long way to go, he uses a long fuse. Sometimes I saw the miners putting in holes and firing them. When I was working in the Cardiff, I had some partners, and I learned a little how to load holes. When I came on shift, I examined the top of the raise to see how the holes had broke. I didn't make a careful examina-

tion of the top of the raise. I knew a little about a missed hole or a missed shot when I went to work in this raise. When I went to work for the Triangle Mining Company, I didn't know anything about it. All I heard was a fellow told me before it was dangerous to drill into a missed hole. Mr. Wilson, the foreman, never asked me at any time whether I was a miner. Nothing was said between me and Wilson about my experience as a miner. When I was alone I always counted the shots. I didn't notice anything the matter with the powder I used. I didn't have any trouble with it. It had exploded all right before. It must have been a missed hole that I picked into.''

Leonard G. Hardy, a witness for the plaintiff, testified:

''It is customary, when you have loaded seven or eight holes, for an experienced miner to keep track of the number of explosions heard so that he will know if there is any holes that miss fire. When one miner is working at the face, and another miner twenty or thirty feet back, both charging holes, they will arrange for one to shoot a little ahead of the other, using the longer fuse for the first shots, then shorter, so as to give them both time to get out of the way. The procedure of a miner always counting his shots to see if he hears an explosion from each of his charges of powder is one that is universally followed by miners; it is thoroughly well known and is recognized by all miners. Even though one hears as many explosions as he had charged holes, there still may be a missed hole. One cannot be entirely safe unless he thoroughly examines each of the places where he has put in charges of powder. It is a miner's duty, when he comes on shift the following morning, to make careful and thorough examination of the places where each one of his holes has been drilled and the powder inserted. There is no way in which the danger of injury can be obviated except a careful observation by the miner himself of the place where he put in the holes.''

Peter Cloonan, a witness for plaintiff, testified:

''There is a general practice among miners to count holes. Where two or more are working together, drilling holes, when we get through drilling we light our holes at the same time,

and go to a place of safety and get these reports; that is when the counting is done. As a rule when you do not get the full reports you should be more careful. Still, at the same time, they might all have exploded. Not knowing whether they have all exploded or not, the only way that he can be protected is for him to get down there and carefully examine each of the places where the holes have been inserted. The danger that there may be missed holes is well known to everybody that works around a mine."

It is first contended by plaintiff that the court erred in permitting defendant to show, over the objection of the plaintiff, that it did not own the mine, but was working it under lease when the accident in question occurred. Ownership in the defendant was alleged by plaintiff in his complaint and denied in the answer of defendant. While we do not deem it very material as to whether the defendant was an owner of or merely held a leasehold interest in the mining property where plaintiff was rendering services to the defendant at the time of the accident in question, yet, ownership having been alleged in the complaint and denied in the answer, we think the defendant was clearly entitled to show that its interest in the property was a leasehold interest only; and the trial court did not commit error in receiving the defendant's evidence tending to prove the fact.

It is contended that the trial judge made unnecessary and prejudicial statements at the trial in the presence of the jury, and that plaintiff's counsel was unduly restricted in the cross-examination of Mr. Hurley, a witness for the defendant. The record does not disclose the purpose of plaintiff's counsel, nor the character of the evidence he was seeking for on cross-examination of the witness. The remarks of the court indicated it was with reference to a collateral matter. We think counsel would have had very little to complain of had he more readily acquiesced in the ruling of the court.

There is nothing presented in this assignment to warrant this court in reversing the judgment.

Many errors are assigned and relied on by the plaintiff in the giving and refusal to give to the jury of certain instructions by the trial court. We have carefully reviewed these

assignments of error and the trial court's instructions given to the jury, and, after doing so, we are convinced that the court in its instructions to the jury stated the issues in fairness and without any prejudicial error to the plaintiff. In view of the evidence disclosed by the record, it would subserve no good purpose to here enter into a detailed discussion of these assignments of error.

According to plaintiff's own testimony, when he engaged his services to the defendant, he was of full age; for more than two years immediately previous he had been employed in and about various mines. Not only had he seen others at work, drilling and blasting rock with powder, but he too had worked as a miner sufficiently long for his own experiences to have taught him the dangers attending the use of powder for blasting, as we think the record conclusively shows. If he was not skilled in the use of powder in blasting, if he was incapable of appreciating the dangers attending its use, in offering his services to the defendant he should have apprised it of his lack of knowledge and inability to do that which, as the record here shows, miners generally are called upon to do in the performance of their duties while engaged in the work of mining for their employers. The defendant had the right to assume, when plaintiff offered his services to it, that he had sufficient knowledge and skill to properly discharge the duties he was attempting to perform at the time the accident in question occurred. *Union Pac. Ry. Co.* v. *Estes,* 37 Kan. 715, 16 Pac. 131; *Sunney* v. *Holt, etc.* (Ohio C. C.) 15 Fed. 880; *Huber* v. *Jackson & Sharp Co.,* 1 Marvel's (Del.) 374, 41 Atl. 92; *Pittsburgh, Cincinnati & St. Louis Ry. Co.* v. *Adams,* 105 Ind. 151, 5 N. E. 187; *Whittaker* v. *Coombs,* 14 Ill. App. 498; *Wharton* v. *Tacoma Fir Door Co.,* 58 Wash. 124, 107 Pac. 1057.

It is contended by plaintiff that defendant operated its mines without any system for the carrying on of its work; that it failed to promulgate rules and regulations for the government and direction of its employees while engaged in drilling and charging holes with powder, and exploding charged holes. True, in the case at bar, no

rules had been promulgated by defendant calculated to guard against accidents in the work plaintiff was engaged in doing— a work necessarily hazardous and attended with great risk. It is well settled law that a master is not justified in conducting a hazardous and complicated business without some system of rules and regulations calculated to lessen the risks his servants will necessarily incur while engaged in their employment. However, in the case at bar, this doctrine has no application. The record conclusively shows that the plaintiff alone was engaged in the performance of all the duties attending the work he was doing for the defendant when the accident in question occurred. That he was sufficiently mature in years, experienced, and competent, not only the testimony of many witnesses who were experienced miners, but the testimony of the plaintiff himself at the trial, very conclusively shows.

We fail to find any testimony in the record tending to show that the work plaintiff was called upon to do should have been methodized by formal rules, or that such rules in the slightest degree would have avoided the accident complained of.

In Labatt's Master and Servant, vol. 3, p. 2951, in speaking of rules in the carrying on of work in cases where necessity is shown, it is said:

"But in the absence of evidence showing that rules would be useful or feasible under the circumstances, the master cannot be found negligent in not having promulgated them. It is therefore error to leave the case to the jury where the plaintiff has offered no evidence which indicates that other employers in the same business had promulgated any such rule, or that the suggested rule was necessary or practicable, or that the necessity and propriety of making such rule was so obvious as to make the question one of common knowledge and experience."

McCarty, District Judge, sitting in the case of *Fritz* v. *Electric Light Co.*, 18 Utah, 493, 56 Pac. 90, in speaking for this court, says:

"There are certain kinds of employment where, on account of their nature, it becomes necessary, and it is the duty of the master, to promulgate and publish rules and regulations for the guidance and government and safety of its employees. Especially is this true where a large number of persons are at work and the danger or safety of the employment depends largely upon all the employees performing their duties

promptly at stated times and in a given manner. But we do not understand the rules to apply to cases such as the one in question where the very nature of the employment makes it dangerous, and the dangers incident thereto and growing out of it are of common knowledge and are fully known to and understood by the servant, and the safety of others cannot be imperiled in any way by any act or omission of his in the performance of his duties, and his safety depends wholly upon the degree of skill, care, and caution used by himself, and not upon that of his fellow servants. * * * In fact, it is not contended that the accident was due wholly or in part to any act or omission of his fellow servants; therefore the defendant cannot be held liable in this case on account of its failure to furnish its employees with printed rules, as the record shows conclusively that such failure did not in any way contribute to the accident.''

To the same effect, see *Stone, Adm'r* v. *Union Pacific R. Co.*, 35 Utah, 305, 100 Pac. 362; *Benfield* v. *Vacuum Oil Co.*, 75 Hun, 209, 27 N. Y. Supp. 16; *Pern* v. *Wussow*, 144 Wis. 489, 129 N. W. 622.

There is no evidence disclosed in the record here that mine operators promulgate rules in any case for the government of their employees when they are engaged in the kind of work in question. On the other hand, it appears from the record here that the usual custom among miners and the one generally adhered to in mining operations is otherwise, and best stated by the plaintiff's own witness, Leonard G. Hardy, when he says:

''The procedure of a miner always counting his shots to see if he hears an explosion from each of his charges of powder is one that is universally followed by miners. It is thoroughly well known and is recognized by all miners; * * * and one cannot be entirely safe unless he thoroughly examines each of the places where he puts in charges of powder. * * * There is no way in which the danger of injury can be avoided, except a careful observation by the miner himself of the place where he has put in the holes.''

The record here abounds with convincing proof that the plaintiff failed to do the things and take the precaution for himself that miners generally do while engaged in their work. As we view the record, no negligence was shown    7, 8 on the part of the defendant contributing to the injury complained of by plaintiff; nor do we find any prejudicial

error committed by the district court in the trial of the case. The judgment therefore must be affirmed, with costs to respondent.

It is so ordered.

FRICK, C. J., and McCARTY, J., concur.